CRUZ MANAGEMENT CO., INC., & another[1] *vs.* GLORY
WIDEMAN.

Suffolk. February 7, 1994. - May 12, 1994.

Present: WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Housing. Landlord and Tenant,* Habitability, Rent. *Massachusetts Housing Finance Agency. Damages,* Breach of implied warranty of habitability. *Constitutional Law,* Federal preemption.

On a claim by a tenant part of whose rent was subsidized against her
landlord for breach of the warranty of habitability, the judge correctly
awarded compensatory damages to the tenant measured by the differ-
ence between the value of the dwelling as warranted and the value of
the dwelling as it existed in its defective condition. [775-777]
In an action between a landlord and a tenant who was the recipient of a
Federal rent subsidy, in which the Massachusetts Housing Finance
Agency (MHFA) moved to intervene after the trial had been com-
pleted, the record did not provide a basis for this court to conclude that
an award of damages to the tenant for breach of warranty of habitabil-
ity interfered with any rights MHFA had with respect to the landlord
under the terms of its contracts or Federal regulations. [777-779]
Nothing in the Federal statutes and regulations governing the "section 8"
Federal housing assistance program provides that the power granted to
the Massachusetts Housing Finance Agency to correct substandard
conditions in subsidized housing is intended to supersede the rights con-
ferred by State law on an individual tenant to achieve the same pur-
pose. [779-781]
Public policy requires low income tenants receiving rent subsidies to re-
ceive the full measure of protection afforded to them by State law.
[781].

[1]The intervener, Massachusetts Housing Finance Agency. We
acknowledge the brief of the Massachusetts Law Reform Institute filed on
behalf of the amici curiae, Massachusetts Tenant Organization and
Massachusetts Union of Public Housing Tenants.

SUMMARY PROCESS. Complaint filed in the Boston Division of the Housing Court Department on April 30, 1990.

The case was heard by *Herman J. Smith, Jr.*, J.        ·

The Supreme Judicial Court granted a request for direct appellate review.

*Janet Steckel Lundberg* (*Richard M. Bluestein* with her) for Massachusetts Housing Finance Agency.

*Jeffrey W. Purcell* for the defendant.

*Henry Korman & Charles Harak*, for Massachusetts Tenants Organization & another, amici curiae, submitted a brief.

GREANEY, J. The plaintiff, Cruz Management Co., Inc., commenced a summary process action for possession under G. L. c. 239 (1992 ed.) in the Housing Court for the city of Boston against its tenant, the defendant, Glory Wideman. Wideman filed counterclaims alleging (1) breach of the implied warranty of habitability; (2) breach of the covenant of quiet enjoyment, see G. L. c. 186, § 14 (1992 ed.); (3) retal- · iation, see G. L. c. 186, § 18 (1992 ed.); and (4) violations of G. L. c. 93A (1992 ed.). After a trial was held before a judge of the Boston Housing Court, the Massachusetts Housing Finance Agency (MHFA) moved to intervene in the case on the side of Cruz Management. See Mass. R. Civ. P. 24 (a) and (b), 365 Mass. 679 (1974). The judge allowed the motion and permitted MHFA to supplement the record. The judge rendered a written decision in Wideman's favor concluding, among other things, that conditions in her apartment had been in breach of the implied warranty of habitability, and that the value of the apartment had been reduced by fifty per cent.[2] Judgment entered for Wideman.

A part of Wideman's rent was paid with rent subsidy funds, provided by the United States Department of Housing and Urban Development (HUD), under a program of aid for the rehabilitation of existing housing, see 42 U.S.C. § 1437f (1988 & Supp. 1990), which is administered by MHFA.

---

[2]Wideman vacated the apartment prior to trial due to its condition. Therefore, possession was not an issue at trial.

This program generally is referred to as the "section 8" housing assistance program. See Ayala v. *Boston Hous. Auth.*, 404 Mass. 689, 694 (1989). The judge calculated breach of warranty damages (fifty per cent of the rent during the relevant period) based on the contract rent paid for the apartment, and he doubled the warranty damages pursuant to G. L. c. 93A, under which he also awarded attorney's fees.[3] Cruz Management and MHFA appealed.[4] We granted an application for direct appellate review and now affirm the judgment.

We briefly summarize the facts found by the judge. Wideman's tenancy with Cruz Management commenced on or about May 18, 1988. She vacated her apartment, located at 228 Magnolia Street, in the Dorchester section of Boston, some time in October, 1990. During her tenancy, she and her two sons endured continuing infestations of rodents and cockroaches. Heat in the apartment ranged from nonexistent (at worst) to insufficient (at best). Cruz Management had notice of these defects, as well as others, which the judge found ex-

---

[3]The judge subtracted $4,100 from the award, representing the rent withheld by Wideman before she vacated the apartment. See *Wolfberg* v. *Hunter*, 385 Mass. 390, 399-400 (1982).

The judge also awarded Wideman the equivalent of two months' rent on her retaliation claim under G. L. c. 186, § 18. No issue is raised as to these damages on appeal. Although the judge found a breach of the covenant of quiet enjoyment, he awarded no damages on this claim to avoid what would have been a duplicative award. See *Simon* v. *Solomon*, 385 Mass. 91, 107-111 (1982).

[4]Cruz Management filed a notice of appeal from the judgment, but has failed to file a brief. It appears that Cruz Management no longer has an interest in the litigation because MHFA has terminated it as the project's manager. In its motion to intervene, MHFA represented to the judge that under its agreement with Cruz Management, MHFA might be liable to the tenant for any judgment assessed against Cruz Management. MHFA also stated that a decision on the measure of damages recoverable by a tenant whose rent is subsidized with Federal funds provided pursuant to 42 U.S.C. § 1437f for a breach of the implied warranty of habitability, will affect MHFA's ability to administer these funds. The judge concluded that MHFA should be permitted to intervene in this action. Wideman has not appealed from the allowance of the motion to intervene.

isted, but which he did not specifically describe.[5] Most of the violations remained uncorrected through October, 1990, when Wideman finally vacated. The sufficiency of the evidence supporting the judge's findings is not contested.

The contract rent for the apartment, for the period from May, 1988, through October, 1990, totalled $24,445.50, of which Wideman personally was responsible for $9,437.[6] Despite the deplorable condition of the premises, the balance of the rent apparently was paid to Cruz Management by MHFA, as administrator of the section 8 program.

MHFA argues, as it did below, that the judge should have awarded breach of warranty damages to Wideman based only on the portion of the rent for which she was personally responsible. MHFA maintains that this result is in accord with precedent of this court, and that an award of damages based on the contract rent may impede its ability to recover rent subsidies it has paid for housing that is not safe and sanitary, a right that it has by contract and under Federal regulations governing the section 8 housing subsidy program. MHFA also contends that if a tenant in Wideman's position is entitled to damages based on the contract rent, MHFA's ability to monitor and administer section 8 housing may be seriously impaired. We conclude that Wideman was entitled

[5]In his decision, the judge adopted certain of Wideman's requests for findings of facts which listed defects in the apartment. The requests, however, are not included in the record. The complaint, and the trial transcript and exhibits, indicate that Wideman also alleged the following. Many of the windows in the apartment were improperly installed and not weather-tight. The lock on the front door of the building had been removed and not replaced, and the intercom system for visitors did not work, in addition to which none of the windows had locks, creating security concerns. Ceilings leaked and were water-stained, there were holes in some of the walls and the supply of hot water was sometimes inadequate.

[6]The monthly contract rent for the apartment was $777 from May, 1988, through May 31, 1989; $854 from June 1, 1989, through May 31, 1990; and $897 from June 1, 1989, through October, 1990. Wideman was required to pay thirty per cent of her salary towards her rent. See 42 U.S.C. § 1437a (a) (1); 42 U.S.C. § 1437f (c) (2) (C) (3). Her share of the rent was $273 in May, 1988, and $316 per month thereafter. Thus, she was responsible for $9,437 of the total contract rent, of which she withheld approximately $4,100.

to damages calculated on the basis of the contract rent, and that such an award does not conflict in this case with Federal regulations governing the administration of the section 8 program.

1. "Damages for breach of the implied warranty of habitability are measured by 'the difference between the value of the dwelling as warranted (the rent agreed on may be evidence of this value) and the value of the dwelling as it exists in its defective condition.' *Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184, 203 (1973) (footnote omitted)." *Darmetko* v. *Boston Hous. Auth.*, 378 Mass. 758, 761 n.4 (1979). See *Haddad* v. *Gonzalez*, 410 Mass. 855, 872 (1991). This measure of damages is purely compensatory. It "gives a tenant . . . the benefit of the bargain because the implied warranty of habitability is part of the bargain" the tenant makes with a landlord when the tenant agrees to pay rent. *Haddad* v. *Gonzalez, supra* at 872. Recovery on this basis is neither a windfall to the tenant nor an award of punitive damages.[7] It is compensation for the infringement of a contractual right. See *Wolfberg* v. *Hunter*, 385 Mass. 390, 398 (1982). Whether or not the tenant is required to pay in rent the full value of the apartment as warranted, the tenant is nonetheless entitled to damages based on the value of the premises in a liveable condition. *Haddad* v. *Gonzalez, supra*

---

[7]MHFA contends that this case is not about the proper measure of damages in an action for a breach of the implied warranty of habitability, but about the proper allocation of those damages. If MHFA had joined this case on the side of Wideman, this assertion might be accurate. MHFA did not do so, and it has not suggested that it is entitled to any monetary recovery in this case. In addition, there is no evidence that, in this case, or in other cases, MHFA has attempted to recover rent subsidies paid for housing units where conditions violated the implied warranty of habitability. Instead, MHFA's position is that, in all cases, a tenant in subsidized housing is entitled to a recovery based on the amount of rent the tenant personally pays, rather than a recovery based on the value of premises as warranted. We think that this case more precisely concerns the measure of damages to which a tenant in Wideman's position is entitled and not the allocation of damages.

at 872. It is, after all, the tenant who suffers when conditions in an apartment violate the implied warranty of habitability.[8]

Previous decisions of this court are not to the contrary. In *Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184 (1973), and *Darmetko* v. *Boston Hous. Auth.*, 378 Mass. 758 (1979), on which MHFA relies, this court did not address the measure of damages to which a tenant, who is the beneficiary of rent subsidies paid on her behalf, is entitled when conditions in the tenant's dwelling breach the implied warranty of habitability. These cases, therefore, offer little guidance on this question. To the extent they bear on the question at all, they support the result reached by the judge. The *Hemingway* decision, which established the measure of damages for a breach of the implied warranty of habitability, is silent on the amount of rent paid by the tenants in that case in relation to the value of their premises as warranted. Even if, as MHFA suggests, the rent paid by the tenants in the *Hemingway* case was based on their income rather than on the value of their premises as warranted, the decision states only that the rent agreed on is "some evidence" of the value of the premises as warranted. The *Hemingway* decision clearly does not hold that the rent actually paid by the tenant definitively establishes the value of the premises as warranted. *Boston Hous. Auth.* v. *Hemingway, supra* at 203. In the *Darmetko* case, *supra*, the basis on which the trial judge awarded damages cannot be determined. The assertion that damages in that case were awarded based on the actual amount of rent paid by the tenant is, therefore, speculative. Furthermore, damages for contempt were assessed against the landlord, and considered as damages in lieu of those that

---

[8]There is language in *Simon* v. *Solomon*, 385 Mass. 91, 110 n.13 (1982), which could be read to suggest that, in a case involving subsidized housing, a damage award based on an amount of rent greater than that paid by the tenant would be, in some measure, a windfall to the tenant. *Haddad* v. *Gonzalez*, 410 Mass. 855, 872-873 (1991), however, plainly rejects this position.

would otherwise have been received for defects in the premises. *Id.* at 759-760.[9]

Recovery by Wideman based on the contract rent does not result in an improper diversion to her of public funds. A private landlord, like Cruz Management, is not shielded from liability to which the landlord would otherwise be exposed merely because a part of its income is derived from Federal subsidy funds. See *Simon* v. *Solomon,* 385 Mass. 91, 110 n.13 (1982) (permitting recovery of treble damages under G. L. c. 186, § 14, calculated on contract rent, where tenant's rent was subsidized). Cf. *Ayala* v. *Boston Hous. Auth.,* 404 Mass. 689 (1989) (permitting section 8 tenant to sue for injuries caused by exposure to injurious levels of lead). As between Wideman and Cruz Management, it certainly is fairer to compensate Wideman fully than it is to allow Cruz Management, which failed to act diligently and responsibly as a landlord, to retain rent payments made on Wideman's behalf.

The parties agree that the contract rent for Wideman's apartment fairly represented the value of the dwelling as warranted. The judge found that the value of the dwelling in its defective condition was fifty per cent of the contract rent and awarded damages accordingly. This was the proper measure of damages. We now turn to the question whether applicable provisions of Federal law preclude an award to Wideman of the full measure of damages due her under State law.

2. MHFA's argument on this question proceeds along two tracks. First, MHFA contends that an award to Wideman based on the contract rent interferes with a right that it has under the Housing Assistance Payment Contract (HAP con-

---

[9]We also do not find persuasive the reasoning in *Housing Auth. of Newark* v. *Scott,* 137 N.J. Super. 110 (1975), and *Housing Auth. of E. St. Louis* v. *Melvin,* 154 Ill. App. 3d 999 (1987). These cases, which concern the proper measure of damages for a breach of the implied warranty of habitability, conclude that damages should be calculated based on the rent paid personally by the tenants, rather than on the value of the premises as warranted. Beginning with the *Hemingway* case, this court has consistently held that damages for a breach of the implied warranty of habitability should be calculated based on the value of the premises as warranted.

tract) and Federal regulations to recover rent subsidy payments when the owner or manager of section 8 housing fails to comply with the HAP contract terms. MHFA also argues that, if tenants in Wideman's position are permitted a recovery based on the contract rent, the potential fiscal impact will interfere impermissibly with its ability to administer the section 8 housing assistance program. We find neither contention persuasive.

(a) The HAP contract between MHFA and Cruz Management[10] required Cruz Management "to provide Decent, Safe and Sanitary housing." Under the contract terms, if MHFA notified Cruz Management that it had failed to maintain a particular dwelling unit in a decent, safe and sanitary condition, and Cruz Management failed to remedy the problem within a prescribed period of time, MHFA was permitted to abate housing assistance payments, even if the tenant on whose behalf the rent subsidy was being paid continued to occupy the unit. If the tenant did not continue in residency, MHFA could still retain rent subsidy payments and use those funds to provide alternative housing for the family. In the event of a default by Cruz Management, the HAP contract gave MHFA the power, after notification, to abate subsidy payments, and to recover "overpayments." The Code of Federal Regulations, 24 C.F.R. § 881.507(c) (1993), similarly provides that, in the event of a default, MHFA could "notify the owner . . . (i) of the actions required to be taken to cure the default, (ii) of the remedies to be applied by the [public housing agency] including specific performance under the [HAP] Contract, abatement of hous-

---

[10]The record contains a copy of the Housing Assistance Payments contract between MHFA and Intervale Magnolia Associates, Cruz Management's predecessor at the project in which Wideman resided. There is no copy of the HAP contract between MHFA and Cruz Management. We assume, as appears to be suggested by MHFA, that the contract between it and Cruz Management contained provisions substantially similar to those of the contract between MHFA and Intervale Magnolia Associates. Because MHFA only intervened after trial, the record does not reveal details of the history of the relationship between Cruz Management and MHFA.

ing assistance payments and recovery of overpayments, where appropriate."

Since MHFA intervened after the trial had been completed, the record furnishes no indication of which of its rights, if any, it attempted to assert against Cruz Management. The record, for example, does not show that MHFA notified Cruz Management that conditions in Wideman's apartment were not decent, safe, and sanitary, or that MHFA advised Cruz Management that it intended to abate subsidy payments on Wideman's behalf. The terms of the HAP contract, and the applicable Federal regulation, clearly require a State housing agency, like MHFA, to provide notice and an opportunity to cure a default before subsidy payments may be abated. Since the record does not permit us to conclude that MHFA has properly asserted its rights, there is no basis in this case to conclude that a full award of damages will affect MHFA's position or rights under its contracts or Federal regulations. We also have no occasion to decide in this appeal whether MHFA can now recover damages from Cruz Management under its right to collect "overpayments" or on the basis of any other theory.

(b) In more general terms, MHFA argues that section 8 tenancies are fully regulated by the Federal government, and, thus, do not necessarily fall within the scope of common law rules governing other landlord-tenant relationships within the Commonwealth. It is suggested that, if tenants in Wideman's position are permitted to recover damages based on the contract rent, the result will be an impermissible interference with the discretion Federal regulations give MHFA to determine how best to remedy conditions at a section 8 housing development when the owner fails to comply with section 8 program requirements.

It is not argued, with respect to section 8 tenancies, that any Federal statute or regulation expressly preempts the common law remedies available to tenants whose premises are in breach of the implied warranty of habitability. See *Jones* v. *Rath Packing Co.*, 430 U.S. 519 (1977). MHFA's position, in essence, is that Federal legislation granting

MHFA the power to regulate compliance with program re-
quirements of section 8 landlords is. a legislative scheme "so
comprehensive that it creates the inference that Congress
'left no room' for State regulation in [this] area." *Attorney
Gen.* v. *Brown,* 400 Mass. 826, 828 (1987), citing *Rice* v.
*Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947). How-
ever, Federal courts, and this court, have recognized that
"Federal law concerning subsidized housing 'is superimposed
upon and consciously interdependent with the substructure of
local law relating to housing.'" *Norfolk Elec., Inc.* v. *Fall
River Hous. Auth., ante* 207, 214 (1994), quoting *Kargman*
v. *Sullivan,* 552 F.2d 2, 11 (1st Cir. 1977). See also 24
C.F.R. § 881.207 (f) (1993) (property for which Federal re-
habilitation funding is sought must comply with "State and
local laws, codes, ordinances and regulations"). In the area
of landlord-tenant law, unless there is an actual conflict be-
tween directives imposed by Federal and by State law, Fed-
eral law will not displace State law. See *Attorney Gen.* v.
*Brown,* 400 Mass. 826, 828-831 (1987).

Under Federal law, MHFA, as has been previously noted,
has the power to abate rent subsidy payments when condi-
tions in a section 8 unit or development are not decent, safe,
and sanitary. If a landlord fails to correct conditions at a
section 8 development, or is otherwise in default, MHFA has
broad powers, including, the power to "terminate the [HAP]
Contract or to take other corrective action, in its discretion
or as directed by HUD." 24 C.F.R. § 881.507(c) (1993).
Federal regulations grant MHFA considerable power to fur-
ther the purpose of the section 8 program, which is "to pro-
vide lower-income families with decent, safe and sanitary
rental housing." 24 C.F.R. § 881.101(a) (1993). See also 42
U.S.C. § 1437f(a) (1988). A tenant's action for a breach of
the implied warranty of habitability (or a counterclaim on
this ground) serves the related purpose of forcing a landlord
to repair defects in a substandard housing unit. See *Simon* v.
*Solomon, supra.* There is no Federal statute or regulation
providing that the power granted to MHFA to correct sub-
standard conditions in subsidized housing is intended to su-

persede the relatively modest right conferred by State law on an individual tenant to achieve the same purpose.

3. As its final point, MHFA argues that it is unsound, as matter of policy, to favor recovery for a single tenant over the interests of the general population in a housing development when limited funds are available to correct deficiencies in low income housing. MHFA suggests that the power it possesses to regulate the conduct of section 8 landlords obviates the need for a strong incentive to section 8 tenants to sue and force repairs to their apartments. The facts of this case prove otherwise. Wideman lived for two years in an apartment lacking heat, infested by vermin, and plagued by other serious deficiencies. As mortgagee, and section 8 administrator, MHFA was fully apprised of the deplorable conditions at the project in which Wideman's apartment was located. It had, in fact, removed the prior owner as manager of the project and substituted Cruz Management. Conditions still did not improve. It is obvious that "[l]ow income tenants receiving rent subsidies, who are often the victims of the most flagrant violations [in housing conditions]," *Simon* v. *Solomon*, 385 Mass. 91, 110 n.13 (1982), require the full measure of protection afforded to them by State law.

*Judgment affirmed.*