Cowin, J.
INTRODUCTION
The present case is a summary process appeal pursuant to G.L.c. 239, §5. After a one day jury-waived trial, this Court issued a Memorandum of Decision and Order dated May 13, 1997 granting judgment for tenant Lucy Vaughan on the summary process complaint and judgment for the landlord, Christopher Clegg, on Vaughan’s counterclaim. This matter is now before the Court on Vaughan’s motion for reconsideration pursuant to Superior Court Rule 9D and Mass.R.Civ.P. 52(b) and 59(e). For the reasons discussed below, the defendant’s motion for reconsideration is ALLOWED, and after reconsideration, the original decision is to remain in effect.
BACKGROUND
Plaintiff Christopher Clegg (Clegg) owns a two-family home located at 481 Broad Street in Weymouth. Defendant Lucy Vaughan (Vaughan) has been a tenant at will in the second-floor apartment at 481 Broad Street since January 1, 1993. In July of 1996, Vaughan complained to the Weymouth Board of Health regarding problems at the apartment and requested an inspection. The Board of Health inspected the premises on July 17,1996 and indicated that there were some violations. Meanwhile, on July 12th, Clegg told Vaughan that he was selling the properly and handed her a notice to quit which stated that her “tenancy at will . . . terminated ... at the expiration of the 15th day of the month of August 1996.”
On July 31, 1996, Constable George Mather served a notice to quit on Vaughan at her residence, the second-floor apartment. Mather left the notice between the door and door jamb on the second floor porch in the rear of the building. The notice was dated July 30, 1996 and informed Vaughan that she was to deliver up the premises’ “at the end of the next month (August)” of the tenancy. Because Vaughan did not ordinarily use the rear entrance to the apartment, she did not receive the notice to quit until August 3rd when she found it on her back porch.
Clegg then initiated a summary process action against Vaughan in Quincy District Court seeking to regain possession of the property. Vaughan filed a counterclaim seeking damages for alleged violations of the sanitary code pursuant to G.L.c. 239, §8A and interest on her last month’s rent pursuant to G.L.c. 186, §15B. On October 18, 1996, the District Court entered judgment granting possession of the premises to Clegg, and Vaughan then filed the present action pursuant to G.L.c. 239, §5. This Court conducted a one day jury-waived trial on April 23, 1997 and heard the testimony of three witnesses: Clegg, Vaughan and Constable Mather.
In a Memorandum of Decision and Order dated May 13, 1997, this Court found that the notice to quit was not timely served on Vaughan in accordance with G.L.c. 186, §11A [7 Mass. L. Rptr. No. 2, 34 (July 21, 1997). Accordingly, this Court ordered judgment for Vaughan on the summary process complaint. With respect to Vaughan’s counterclaim for damages due as a result of sanitary code violations, this Court found: “Although evidence of such violations was introduced, no evidence of the amount of damages was *135 presented. The tenant bears the burden of proof on her counterclaim and she has not sustained that burden.” Further, with respect to the counterclaim for interest on her security deposit, this Court found: “Although G.L.c. 186, §15B(2)(a) provides for interest at the rate of five percent each year, no evidence was introduced of the amount of the rent. Again, the tenant has not met her burden on that issue.” Accordingly, this Court entered judgment dismissing Vaughan’s counterclaim. Finally, on May 13, 1997, this Court allowed Clegg’s motion to release from escrow the rental payments which Vaughan had paid into Superior Court pending her appeal. Thereafter, on May 19th, Vaughan filed an appeal pursuant to Mass.R.A.P. 3
DISCUSSION
Vaughan now asks this Court to reconsider its decision pursuant to Superior Court Rule 9D and Mass.R.Civ.P. 52(b) and 59(e). Mass.R.Civ.P. 52(b) provides that “upon motion of a party made not more than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly.” Mass.R.Civ.P. 59(e) states that “[a] motion to amend the judgment shall be served no later than 10 days after entry of the judgment.”
Vaughan first contends that the Court erroneously refused to award damages for the sanitary code violations because Vaughan did not introduce separate evidence of the amount of damages. Vaughan argues that evidence of the violations was competent evidence of her damages so that no separate evidence of damages was required. She contends that this is particularly true where, as here, a tenant appears without counsel. On July 19, 1996, the Town of Weymouth Board of Health sent Clegg a letter listing the following Sanitary Code Violations: failure to provide access to the cellar fuse box; failure to install lighting and a separate switch for the upstairs apartment; bulbs missing from the rear stairway, bottom apartment; lack of lighting of the stairs in the rear of the unit; a damaged wall and delaminated wall covering in the front bedroom; and a possible leak under the window. At trial, Vaughan introduced into evidence a certified copy of the Board of Health report listing these violations but did not present any separate evidence of damages.
It is well established that the measure of damages for a breach of the implied warranty of habitability is the difference between the value of the premises as warranted and the rental value of the premises in its defective condition. Boston Housing Authority v. Hemingway, 363 Mass. 184, 203 (1973); McKenna v. Begin, 5 Mass.App.Ct. 304, 305 (1977); Cruz Management Co. v. Wideman, 417 Mass. 771, 775 (1994). This measure of damages is purely compensatory and is neither a windfall to the tenant nor an award of punitive damages. Cruz Management Co. v. Wideman, supra at 775. The contract rent is some evidence of the rental value of the premises as warranted, but is not definitive. McKenna v. Begin, supra at 306; Cruz Management Co. v. Wideman, supra at 776. In determining the rental value of defective premises, factors to be considered include the nature, duration and seriousness of the defects, and whether they might endanger or impair the health, safety or well-being of the occupants. McKenna v. Begin, supra at 306.
Based on the record, the trial court must assess the violations of the sanitary code and determine the percentage by which the tenant’s use and enjoyment of the premises has been diminished by the existence of those violations. McKenna v. Begin, supra at 311. The court is given broad discretion to determine whether minor violations affected the rental value of premises, thus breaching the warranty of habitability and entitling the tenant to damages. Boston Housing Authority v. Hemingway, supra at 200-01, n.16; McKenna v. Begin, supra at 307-08. A tenant need not introduce expert testimony as to the value of particular violations of the sanitary code. Id. at 311. Damages for a breach of the implied warranty of habitability may not be determined by speculation or guess, although an approximate result is permissible if the evidence shows the extent of the damages to be a matter of just and reasonable inference. Id. The tenant must therefore make some showing, through her own testimony or otherwise, of the extent to which the violations interfered with or adversely impacted the use and enjoyment of the premises. Poncz v. Loftin, 34 Mass.App.Ct. 909, 911 & n.2, rev. den., 415 Mass. 1102 (1993). See also Brown v. LeClair, 20 Mass.App.Ct. 976, 977-78 (1985) (upholding a damage award for breach of the warranty of habitability where the tenant introduced photographs of the premises and testified as to the personal property lost and personal injury suffered as a result of the violations).
Without Vaughan’s testimony or any other evidence of the effect of the sanitary code violations on her use and enjoyment of the second floor apartment, this Court could not properly determine the percentage by which the value of her tenancy was diminished. It is well established that a pro se litigant is bound by the same rules of procedure, evidence and substantive law as litigants with counsel. International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 847 (1983); McGowan v. Director of the Division of Employment, 388 Mass. 1003, 1004 (1983); Andrews v. Bechtel Power Corp., 780 F.2d 124, 141 (1st Cir. 1985), cert. den., 476 U.S. 1172 (1986). While Vaughan was certainly not required to present expert testimony with respect to her damages, she was obligated to introduce some evidence beyond a mere list of the sanitary code violations in her unit.
A certified housing inspection report constitutes prima facie evidence of the existence of the sanitary code violations cited therein. Boston Housing Authority *136 v. Hemingway, supra at 200, n.15. However, “the existence of the defect may not, standing alone, give rise to a damage award. A tenant must also show that the defect affected the habitability of the premises. In other words, the defect must be serious enough to have an impact on the use and enjoyment of the premises." Residential Landlord and Tenant Practice 55 (Massachusetts Continuing Legal Education 1997). For example, the Weymouth Board of Health report ambiguously cites bulbs missing from the rear stairway, bottom apartment as a violation. Given that Vaughan lived in the second floor apartment rather than in the bottom unit, it is unclear to this Court whether, or how, such a violation would in any way affect the value of her tenancy.
In addition, the report cites as a violation the lack of lighting of the stairs in the rear of the unit. However, the only testimony before this Court suggests that Vaughan rarely if ever used the rear entrance to her apartment. Thus, without further evidence as to the impact on her tenancy, it is impossible for this Court to meaningfully assess damages for this violation. Similarly, while the report cites as a violation a damaged wall in the front bedroom of Vaughan’s apartment and possible leak under the window, it does not suggest what impact, in terms of health, safety, comfort, property damage or otherwise, this violation had on Vaughan’s tenancy. Indeed, based on the record here, this Court has no basis for determining whether the violations shown by Vaughan are more than de minimis and therefore not a breach of the implied warranty of habitability. Accordingly, I conclude that dismissal of Vaughan’s counterclaim for breach of the warranty of habitability was proper.
Vaughan further contends that this Court erroneously refused to award her damages for the landlord’s failure to pay interest on the last month’s rent pursuant to G.L.c. 186, §15B(2)(a). She argues that although she did not formally offer into evidence the amount of monthly rent, Clegg admitted the amount of the rent in his answers to interrogatories submitted before the District Court. As a pro se tenant, Vaughan argues that she should be able to rely on this admission as a basis for damages. Chapter 186, Section 15B(2)(a) provides in relevant part:
Any lessor or his agent who receives said rent in advance for the last month of the tenancy shall, beginning with the first day of the tenancy, pay interest at the rate of five percent per year or other such lesser amount of interest as has been received from the bank where the deposit has been held. Such interest shall be paid over to the tenant each year as provided in this clause; provided, however, that in the event that the tenancy is terminated before the anniversary date of such tenancy, the tenant shall receive all accrued interest within thirty days of such termination ... If the lessor fails to pay any interest to which the tenant is then entitled within thirty days after the termination of the tenancy, the tenant upon proof of the same in an action against the lessor shall be awarded damages in an amount equal to three times the amount of interest to which the tenant is entitled, together with court costs and reasonable attorneys fees.
Obviously, in order to award damages under this statute, the court must have before it evidence as to the amount paid as the last month’s rent.
Vaughan is correct that the case file in the District Court reveals that, in his answer to interrogatories, Clegg stated that the rent was $750 per month, that there were no rent increases, and that he received a $375 security deposit and $750 for the last month’s rent from Vaughan on December 15,1992. In addition, a copy of the lease between the parties verifies these figures. Nonetheless, a summary process action filed in Superior Court pursuant to G.L.c. 239, §5 is not an appeal in which the court reviews the record below, but rather is a trial de novo. Thus, Vaughan was obligated to present to this Court any evidence she wished considered. As noted, supra, a pro se litigant is not excused from compliance with the rules of evidence. See Andrews v. Bechtel Power Corp., supra at 141 (holding that where a pro se plaintiff failed to formally introduce certain evidence to the court, he could not claim error based on said evidence on appeal). Accordingly, this Court’s dismissal of Vaughan’s counterclaim under G.L.c. 186, §15B(2)(a) was proper.
Finally, Vaughan contends that the court erroneously released escrowed funds to Clegg pursuant to G.L.c. 239, §5 because the Court did not find that Clegg was entitled to possession of the premises. She also argues that the landlord does not have an undisputed right to escrowed funds until all rights of appeal are exhausted. Chapter 239, Section 5 provides in relevant part:
the defendant shall, before any appeal under this section is allowed from a judgment of... a district court, rendered for the plaintiff for the possession of land or tenements demanded in a case in which the plaintiff continues at the time of the establishment of bond to seek to recover possession, give bond in such sum as the court orders, payable to the plaintiff, with sufficient surety or sureties approved by the court, or secured by cash or its equivalent deposited with the clerk, in a reasonable amount to be fixed by the court ... In an appeal from a judgment of the superior court or a housing court such bond filed shall be conditioned to enter the action in the appeals court. Appeals from judgments of the superior court or a housing court shall otherwise be governed by the Massachusetts Rules of Appellate Procedure. Such bond shall be conditioned to pay to the plaintiff, if final judgment is in plaintiffs favor, all rent accrued at the end of the bond, all intervening rent and all damage and loss which the plaintiff may sustain by the withholding of possession of the land or tenements demanded *137 and by any injury done thereto during such withholding, with all costs, until delivery of possession thereof to such plaintiff. . .
A party may make a motion to waive the appeal bond provided for in this section if he is indigent as provided in Section twenty-seven A of chapter two hundred and sixty-one . . . The court shall require any person for whom the bond or security provided for in the third paragraph has been waived to pay in installments as the same becomes due, pending appeal, all or such portion of any rent which shall become due after the date of such waiver.
On October 31, 1996, the District Court (Black, J.) allowed Vaughan’s motion to waive the appeal bond and ordered her to make rental payments to the Superior Court pending appeal. Vaughan thus paid monthly rent to this Court for the period from December 1996 through May 1997. On May 14, 1997, before Vaughan filed her notice of appeal, this Court allowed Clegg’s motion to release the rental payments from escrow to him. There is nothing in the statutory provision regarding bond requirements that prevents the Court from taking this action. The only bond requirement relates to an appeal by the tenant from a judgment for possession for the landlord. Vaughan is not appealing on the issue of possession, having prevailed thereon. Thus, the bond requirement is moot.
ORDER
For all the foregoing reasons, after reconsideration, it is hereby ORDERED that the original decision is to remain in effect.