Sherron ANDERSON, Appellant,

v.

Olaremi ABIDOYE, Appellee.

No. 02–CV–432.

District of Columbia Court of Appeals.

Argued March 27, 2003.
Decided May 15, 2003.

Cleon L. Cauley, law student, and Nathan A. Neal, Supervising Attorney, D.C. Law Students in Court Program, with whom Ann Marie Hay, Executive Director, D.C. Law Students in Court Program, was on the brief, for appellant.

Nnamdi O. Anya for appellee.

Before STEADMAN and GLICKMAN, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Appellant, Anderson, appeals the amount of the rental abatement awarded her because of housing code violations that breached the warranty of habitability. Appellant argues that the judge erred in limiting her award to the amount she paid in rent, and contends that she is also entitled to receive the portion of the abatement applied to the subsidized rent paid by the District of Columbia Housing Authority (DCHA), the local agent for the Department of Housing and Urban Development (HUD), under the Section 8 Subsidy Program.[1] Finding appellant's argument persuasive to the extent explained in the following, we reverse and remand for further proceedings.

### I.

In December 2000, appellee (the landlord) leased a house to appellant (the tenant) under the Section 8 Voucher Tenant Program. According to the Housing Assistance Payment (HAP) contract and the lease agreement, the monthly rent was $1,350.00. The tenant was to pay $78.00 of the $1350.00, while through DCHA HUD was to contribute $1,272.00. The HAP contract also provided that the tenant was not a third party beneficiary to the contract between the landlord and HUD.

The tenant, who continued to occupy the premises until November 1, 2001, when she was constructively evicted, withheld her rent after March 2001 because of the housing code violations. On June 21, 2001, after two inspections on June 7 and 8, the DCHA notified the landlord that the HAP contract would terminate on August 31, 2001 because the premises did "not meet the Housing Quality Standards for the Section 8 Program." Over the entire period that the tenant occupied the premises, she paid a total of $234.00 to the landlord and HUD paid $8,650.00.

The landlord failed to appear for the Initial Scheduling Conference on November 9, 2001, concerning his complaint against the tenant for non-payment of rent, as well as the tenant's counterclaim which asserted that the premises had numerous housing code violations that breached the implied warranty of habitability. The trial court dismissed the landlord's complaint, entered a default on the counterclaim, and scheduled the matter for an *ex parte* hearing.

Following the *ex parte* hearing on February 15, 2002, the court issued an order awarding the tenant an abatement in rent because the landlord breached the warranty of habitability. Although the trial judge awarded a $6,210.00 abatement, the tenant was only awarded $234.00—the amount she paid to the landlord. The trial judge explained that the tenant was not entitled to the $5,976.00 that HUD paid the landlord because the tenant was not a third party beneficiary under the contract between the landlord and HUD, and HUD

---

1. 42 U.S.C.S. § 1437f (2003).

was not a party to the case. The tenant appeals asserting that she should have been awarded the full abatement award of $6,210.00.

## II.

 Whether the tenant is entitled to HUD's portion of the abatement is a question of law. This court reviews questions of law *de novo*. *See Ba v. United States*, 809 A.2d 1178, 1182–83 (D.C.2002).

The tenant argues that she is entitled to HUD's portion of the abatement under *Multi–Family Management, Inc. v. Hancock*, 664 A.2d 1210 (D.C.1995). She relies on Judge Ferren's statement, with which Judge Steadman concurred, *id.* at 1224, that, as between the tenant and the landlord, compensation for landlord-caused diminution in the bargained-for value should be payable in full to the tenant because "it is certainly fairer to compensate [the tenant] fully than it is to allow [the landlord], which failed to act diligently and responsibly as a landlord, to retain rent payments made on [the tenant's] behalf." *Id.* at 1221 (quoting *Cruz Management Co. v. Wideman*, 417 Mass. 771, 633 N.E.2d 384, 388 (1994)).[2] In *Multi–Family*, however, we ultimately remanded the case to the trial court for it to invite HUD to intervene and claim part of the abatement, and held that if HUD then chose not to intervene the tenant should receive the full abatement. *Id.* at 1221, 1224–25, 1230.

We cannot tell on this record whether HUD or its local agent, DCHA, entered an appearance and pursued or abandoned any interest it had in the disputed funds. Accordingly, consistent with *Multi–Family*, the judgment leaving the HUD payment in the hands of the landlord is reversed and the case is remanded for a determination whether HUD or DCHA seeks repayment. If it does not, then the tenant recovers the disputed funds, *id.* at 1221, 1224, because she did not receive what she bargained for, and the landlord, who failed to maintain the leased premises, should not profit from his breach of duty.

*So ordered.*

---

**2.** While Judge Ferren left open the question whether rent abatement to the tenant could exceed the actual rent paid by the tenant we think the reasoning of the opinion necessarily sanctions that result as between landlord and tenant.