GRETCHEN DARMETKO vs. BOSTON HOUSING AUTHORITY.

Suffolk. May 9, 1979. — August 14, 1979.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, & ABRAMS, JJ.

*Damages*, Breach of implied warranty of habitability, Counsel fees. *Contempt. Landlord and Tenant*, Habitability. *Legal Service Organization.*

In an action by a tenant to recover damages resulting from certain defects in premises she leased, the judge erred in awarding damages both for the breach of the implied warranty of habitability and for breach of the covenant of quiet enjoyment. [761]

In an action by a tenant for breach of the covenant of quiet enjoyment, the judge erred in awarding the plaintiff as damages, under G. L. c. 186, § 14, three times her monthly rental obligation for each month during which defects in the premises remained unrepaired; where the plaintiff's actual damages exceeded three times her monthly rent, actual damages were the proper measure of recovery under § 14. [761-762]

In an action by a tenant to recover damages resulting from certain defects in premises she leased, there was no support in the record for the defendant's contention that its payment of $3,150 to the tenant, as ordered by the court following a determination of contempt, adequately compensated the tenant for the entire period the defects remained unrepaired. [762-763]

A legal services organization was entitled to an award of attorney's fees under G. L. c. 186, § 14, despite the fact that certain work was performed by law students under the direction of a supervising attorney; however, where this court found on appeal that damages awarded the plaintiff in her action under § 14 were excessive, the case was remanded for a new determination of attorney's fees. [763-765]

CIVIL ACTION commenced in the Housing Court of the City of Boston on December 19, 1975.

The case was heard by *Daher*, C.J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*George F. Mahoney* for the defendant.
*James Henry Wexler* for the plaintiff.

WILKINS, J. This appeal by the Boston Housing Authority (BHA) challenges the amount of damages awarded to the plaintiff as a consequence of certain defects in premises she leased from the BHA and further challenges the fact of, and the amount of, the award of attorney's fees to the plaintiff's counsel, the Boston University Legal Aid Program. We agree that a judge of the Housing Court of the City of Boston improperly determined the damages to which the plaintiff was entitled. An award of counsel fees to the Boston University Legal Aid Program was proper, but we remand the case for reconsideration of the appropriate amount of those fees in light of principles set forth in this opinion.[1]

The plaintiff has been a tenant of the BHA since May 15, 1973. For the first year of her tenancy, there were defects in the kitchen and living room floors which the judge ruled constituted a breach of the BHA's implied warranty of habitability. In addition, from May 15, 1973, until at least July 20, 1976, the plaintiff's roof leaked, causing water to enter a closet and to accumulate in the plaintiff's living room. The judge ruled that the leaks also constituted a breach of the BHA's implied warranty of habitability. The judge awarded the plaintiff $793.50 as the measure of the reduced value of the leased premises due to the defective floors and the leaky roof and $415.00 as "consequential" damages for water damage to her personal property.[2] The judge found that a claim of emotion-

---

[1] The BHA also has argued that a class action, known as the *Perez* case, barred the maintenance of this action. See *Perez* v. *Boston Hous. Auth.*, 368 Mass. 333, appeal dismissed sub nom. *Perez* v. *Bateman*, 423 U.S. 1009 (1975). The record fails to disclose any reason why that case bars the maintenance of this one.

[2] We are unable to calculate how the judge arrived at the figure of $793.50 from the per diem damages determined by him, but neither party has objected to the figure. Perhaps the BHA's liability indicated by the subsidiary findings was offset by unpaid rent.

al distress due to the BHA's failure to repair the premises had not been proved.

The judge further ruled that the leaks in the roof (but not the defective floors) interfered with the plaintiff's quiet enjoyment of the leased premises. Because of this interference, and based on his reading of G. L. c. 186, § 14, the judge ruled that the plaintiff was entitled to an additional $5,358, three times her monthly rent obligation ($47) for each month during which the leaky roof was unrepaired (from May 15, 1973, to July 20, 1976).

Prior to the trial, the judge had fined the BHA $3,150 for contempt of court for failure to repair the leaks and had ordered that the money be paid to the plaintiff. The $3,150 represented a fine of $50 a day for the period from July 21, 1976, to September 21, 1976.[3] At trial, the judge did not award any damages for the period after July 20, 1976, because, in his view, the contempt award had adequately compensated the plaintiff for the period from July 21, 1976, to September 21, 1976, the date already determined to be the date on which the leaks in the roof were repaired.

The judge allowed $3,400 in attorney's fees to the plaintiff's counsel, the Boston University Legal Aid Program, none of which was to be paid to "legal interns." The services were performed by two law students and by a member of the bar, an instructor at Boston University Law School, whose responsibilities were to supervise law students placed through a clinical program in the East Boston office of Greater Boston Legal Services, Inc. The two law students were representing the plaintiff pursuant to rule 3:11 of this court (366 Mass. 867 [1975]) which, among other things, authorizes a senior law student to appear

---

[3] The fine of $50 a day had been proposed in an order entered by another judge of the Housing Court who found the BHA in contempt for failure to repair the leaks as directed. That order gave the BHA seven days to repair the leaks with the threat of a fine thereafter of $50 for each day that the leaks were not repaired.

"without compensation" on behalf of an indigent party in civil proceedings in a Housing Court, provided that a member of the bar employed by a law school clinical instruction program generally supervises the conduct of the case.

1. *Damages.* The damages awarded to the plaintiff were determined incorrectly.

The BHA does not challenge the judge's conclusion that its failures to repair the leaky roof and the defective floors were breaches of its implied warranty of habitability or his determination that the leaky roof interfered with the plaintiff's quiet enjoyment of the leased premises. We see no reason, however, for the plaintiff to recover cumulatively for a breach of the implied warranty of habitability and for interference with her quiet enjoyment of the premises. In the absence of any statute authorizing recovery beyond her actual loss, she may not recover for the same wrong under each theory.[4]

The judge's conclusion that, under G. L. c. 186, § 14, as amended by St. 1974, c. 192, § 1, the plaintiff could recover three times her monthly rental obligation for each month during which the leaks remained unrepaired is incorrect. Section 14 provides that a lessor who commits any act in violation of that section (including interference "with the quiet enjoyment of any residential premises") shall "be liable for actual and consequential damages or

---

[4] Damages for breach of the covenant of quiet enjoyment where the tenant remains in possession of the premises are measured by the difference between the value of what the lessee should have received and the value of what he did receive. *Charles E. Burt, Inc.* v. *Seven Grand Corp.*, 340 Mass. 124, 130 (1959). Damages for breach of the implied warranty of habitability are measured by "the difference between the value of the dwelling as warranted (the rent agreed on may be evidence of this value) and the value of the dwelling as it exists in its defective condition." *Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184, 203 (1973) (footnote omitted). These remedies are "quite similar." *Id.* at n.21.

Section 14 of G. L. c. 186 expands the measure of damages to include all "actual and consequential damages" where, as here, there has been a breach of the covenant of quiet enjoyment.

three months' rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee." Nowhere is there any indication in § 14 that each rental period should be considered separately in determining damages. Section 14 allows a minimum recovery of three months' rent as an incentive to the pursuit of relief where the actual and consequential damages are slight or are difficult to prove. When the actual damages exceed three months' rent, however, § 14 plainly states that actual damages should be the measure of recovery.[5]

It is clear that the plaintiff's actual damages exceeded three times her monthly rent of $47. Her actual damages included the diminution of the value of the leasehold due to the breach of the implied warranty of habitability, as well as the damage to her personal property. Damages for the breach were $793.50, and damage to her personal property was $415.

The BHA argues that its payment of $3,150 to the plaintiff, as ordered by the court following the determination of contempt, adequately compensated the plaintiff for any violation of her rights for the entire period during which the floors and roof remained unrepaired. We assume that a civil contempt order issued in the course of a proceeding may be challenged on an appeal from a final judgment.[6] The record, which does not include a tran-

---

[5] In its brief, the BHA cites cases in which the other judge of the Housing Court of the City of Boston has interpreted § 14 as we have in this opinion.

[6] A contempt order issued during the course of a proceeding has been held not to be a final order appealable by a party. See, e.g., *Securities & Exch. Comm'n* v. *Sloan*, 535 F.2d 679, 680 (2d Cir. 1976), cert. denied, 430 U.S. 966 (1977); *Cromaglass Corp.* v. *Ferm*, 500 F.2d 601, 604 (3d Cir. 1974), and cases cited; *Hughes* v. *Sharp*, 476 F.2d 975, 975 (9th Cir. 1973); *Hodgson* v. *Mahoney*, 460 F.2d 326, 328 (1st Cir.), cert. denied, 409 U.S. 1039 (1972). A civil contempt proceeding has been said to be reviewable in connection with an appeal from a final judgment in the main action. See 9 Moore's Federal Practice par. 110.13 [4], at 167-168 (2d ed. 1975); 15 C. A. Wright, A. R. Miller & E. H. Cooper, Federal Practice and Procedure § 3917, at 620-621 (1976); Wright, Byrne, Haakh, Westbrook & Wheat, Civil and Criminal Contempt in the Federal Courts, 17 F.R.D. 167, 176 (1955).

script of the contempt proceedings, fails to disclose the basis on which the amount of the award was determined. The contempt order was confined to a period of time after the period for which the damages discussed earlier in this opinion were awarded. Of course, an award to a litigant in a civil contempt proceeding must be compensatory or remedial. See *Grunberg* v. *Louison,* 343 Mass. 729, 736 (1962).[7] On this record, however, we cannot say that the amount awarded was excessive or based on a misapplication of proper principles of law. Nor can we say that in measuring the period of the contempt the judge was plainly wrong in finding that the roof was not repaired until September 21, 1976.[8]

2. *The award of attorney's fees.* We reject the BHA's argument that attorney's fees should not be allowed to the plaintiff's counsel because the services furnished by the Boston University Legal Aid Program were free. The payment of attorney's fees is authorized explicitly by G. L. c. 186, § 14. An unsuccessful defendant is liable for "the costs of the action, including a reasonable attorney's fee." No exception is made where counsel is a legal services organization nor where the defendant is a public entity such as the BHA. We said recently that "when attorney's fees are statutorily authorized legal service

[7] A fine for civil contempt should include only fair compensation for losses suffered because of disobedience of the court's order. *Lyon* v. *Bloomfield,* 355 Mass. 738, 744 (1969). *Grunberg* v. *Louison,* 343 Mass. 729, 736 (1962). *Godard* v. *Babson-Dow Mfg. Co.,* 319 Mass. 345, 349 (1946). Those losses, which need not be measured with undue precision (*Department of Pub. Health* v. *Cumberland Cattle Co.,* 361 Mass. 817, 832 [1972]), include pecuniary injury caused by the act of disobedience, any taxable costs of the suit, the expense of counsel fees and other disbursements in enforcing the plaintiff's rights (*Coyne Indus. Laundry of Schenectady, Inc.* v. *Gould,* 359 Mass. 269, 277 [1971]).

[8] Once the date of the repair of the roof was determined for purposes of the contempt order, the BHA had no right to insist that the repair date be redetermined in the course of subsequent proceedings in the case.

organizations are entitled to receive such awards." *Lincoln St. Realty Co.* v. *Green,* 374 Mass. 630, 631 (1978). There is a wealth of authority in support of awarding attorney's fees to a legal services organization where an award is authorized by statute. See, e.g., *Perez* v. *Rodriguez Bou,* 575 F.2d 21, 24 (1st Cir. 1978); *Rodriguez* v. *Taylor,* 569 F.2d 1231, 1244 (3d Cir. 1977), cert. denied, 436 U.S. 913 (1978); *Torres* v. *Sachs,* 538 F.2d 10, 12-13 (2d Cir. 1976); *Gregory* v. *Sauser,* 574 P.2d 445 (Alas. 1978); *Winters* v. *Security Pac. Natl Bank,* 49 Cal. App. 3d 510, 515 (1975).[9]

The amount of a reasonable attorney's fee lies largely in the discretion of the judge. Our cases have noted the factors to be considered. See *Heller* v. *Silverbranch Constr. Corp.,* 376 Mass. 621, 629-630 (1978); *First Nat'l Bank* v. *Brink,* 372 Mass. 257, 265-267 (1977); *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 569 (1933). See also S.J.C. Rule 3:22, DR 2-106, 359 Mass. 807 (1972). Federal courts reviewing an award of statutorily authorized attorney's fees have adopted similar standards. See *Johnson* v. *Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir. 1974), approved in *Souza* v. *Southworth,* 564 F.2d 609, 612 (1st Cir. 1977).

We see no reason why the fee should be discounted simply because counsel is a legal services organization. Nor does the fact that certain services were performed by uncompensated law students require that the value of those services be ignored.[10] Of course, the value of those

[9] Cases relied on by the BHA not involving any statute are irrelevant. In its brief, the BHA fails to face the explicit, mandatory language of G. L. c. 186, § 14.

[10] There is nothing in S.J.C. Rule 3:11 (366 Mass. 867 [1975]) that bars a legal services organization employing a law student from receiving a statutorily authorized fee. The prohibition against a law student's receiving compensation was originally included in rule 3:11 to assure that no law student representing an indigent criminal defendant could receive compensation from public funds. That reference to service "without compensation" has been preserved in the course of subsequent, expansive amendments of rule 3:11.

services must be carefully assessed because the students' efforts may have been unproductive or may have been duplicated in the work of the supervising attorney. On the record before us, however, we find no showing of a duplication of effort that would make the judge's determination clearly improper.

The plaintiff argued below that the degree of success was a factor in determining the amount of a reasonable attorney's fee. Of course, success in establishing a statutory violation was a precondition to entitlement to an attorney's fee. Here, we do not know how much weight the judge placed on the degree of the plaintiff's success. The judge gave no explanation as to how he arrived at the amount of the fee. Although it has been substantially reduced through this appeal, the plaintiff's success was considerable. After obtaining $3,150 as a contempt award, the plaintiff, whose monthly rent was $47, was granted over $5,300 in (erroneously determined) statutory damages and over $1,200 in actual damages. Because we have ruled that the damages awarded were excessive, a new determination of attorney's fees should be made, which may include attorney's fees on this appeal.

3. The judgment is reversed. The case is remanded for the entry of a judgment awarding damages and counsel fees in accordance with this opinion.

*So ordered.*

This court recently amended its order implementing rule 3:11 to make it clear that a law student may receive compensation from the legal services organization for which he works.