Abdelkhaleq Abdeljaber vs. Azhari Gaddoura
& another.[1]

No. 02-P-774.

Worcester. November 18, 2003. - January 7, 2004.

Present: Duffly, Dreben, & Kafker, JJ.

Housing Court, Report. Landlord and Tenant, Habitability, Quiet enjoyment. Damages, Breach of covenant of quiet enjoyment, Breach of warranty.

Where, after the trial in a summary process case involving a dispute between the plaintiff landlord and the defendant tenants, the Housing Court judge, without notifying the parties, ordered a housing specialist to inspect the apartment at issue, the judge erred in relying on that report in deciding the tenants' claim of breach of the implied warranty of habitability, given that the parties had no opportunity to challenge either the contents or the admissibility of the report or to examine the housing inspector; because this court could not say that the error was harmless, reversal was required of that portion of the judgment that related to the finding of a material breach of the implied warranty of habitability. [296-300]

Where this court reversed that portion of the judgment in a summary process case that related to the finding of a material breach of the implied warranty of habitability, the award to the defendant tenants of three months' rent under G. L. c. 186, § 14, for interference with their quiet enjoyment of the apartment at issue was not duplicative. [300-302]

Summary process. Complaint filed in the Worcester Division of the Housing Court Department on November 15, 2001.

The case was heard by John G. Martin, J.

Paul F. Dauphinee for the plaintiff.

Eric J. Dinnocenzo (Jonathan Mannina with him) for the defendants.

Kafker, J. After the trial ended, and without notifying the parties, a Housing Court judge ordered a housing specialist to inspect the apartment at issue in this landlord-tenant dispute between Abdelkhaleq Abdeljaber, the landlord, and Azhari Gad-

---

[1]Azhar K. Kheiry.

doura and Azhar K. Kheiry, the tenants. The judge later specifically stated that he based his finding of a material breach of the implied warranty of habitability on the report of this housing specialist. Such reliance was improper, and we therefore vacate the judgment.

1. *Procedure followed by the trial judge, and his findings.* A jury-waived trial in this summary process case was conducted at the Worcester Housing Court on December 13, 2001. The tenants had asserted various counterclaims, including breach of the implied warranty of habitability, interference with quiet enjoyment, intentional infliction of emotional distress, and violation of G. L. c. 93A. The tenants and the landlord testified, and the tenants introduced inspection reports of the Worcester department of public health and code enforcement, which described a variety of code defects concerning the apartment. After taking the case under advisement, and without notice to the parties, the judge directed a housing specialist to view the apartment. On December 17, 2001, the housing specialist filed a report with the judge describing defects that included kitchen ceiling tiles with holes which "tenant claims [were] caused by mouse infestation," mouse droppings and roach carcasses, unworkmanlike repairs to bathroom sink, a leaking bathtub, and an inoperable burner and oven in the kitchen stove.

Also on December 17, 2001, the judge issued his findings of fact and order for judgment, which included the following: "Based on the report of the Housing Specialist the Court finds a material breach of the implied warranty of habitability from March through December [of 2001] that has the effect of diminishing the value of the tenancy by 40% for that period or by $2400." He also found a breach of the covenant of quiet enjoyment in violation of G. L. c. 186, § 14, because "the [landlord] himself attempted to do most of the repairs in the early months of the tenancy. Not only were these repairs not done in a good and workmanlike manner but the [tenants] (husband, wife and eight year old child) were forced to live in one bedroom for three months." Furthermore, "during the heating season," in March and October, the tenants "were without adequate heat." He awarded the tenants statutory damages of three months' rent, which totaled $1,800, plus attorney's fees.

In addition, he found that the landlord grabbed the tenants' child and shouted obscenities at her in view of the mother, thereby inflicting "severe" emotional distress and causing $3,000 in damages. Finally, he found the landlord's breach of the implied warranty of habitability and intentional infliction of emotional distress were "unfair and deceptive acts that were knowingly committed," all in violation of G. L. c. 93A. The court therefore doubled the tenants' actual damages to $10,800 and awarded reasonable attorney's fees.[2] The landlord appealed.[3]

2. *Discussion.* The landlord claims that (1) the trial judge's use of a housing specialist to report back to him, after the trial had ended and without notice to counsel, is reversible error, and (2) the damages awarded by the court for breach of the implied warranty of habitability and for interference with the tenants' right to quiet enjoyment are duplicative. We agree that the trial judge's reliance on the housing specialist's inspection of the apartment to decide the breach of the implied warranty of habitability claim after trial and without notice to the landlord requires us to vacate the trial judge's decision on that count. That error further requires a subtraction of a component of the G. L. c. 93A damages award. As our discussion below points out, however, because of our disposition there is no longer the possibility that the damages awarded for interference with quiet enjoyment duplicate recovery for breach of the implied warranty of habitability.

Housing specialists are authorized by statute in G. L. c. 185C, § 16. "The first justice of a particular housing court may appoint, . . . subject to approval of the chief justice of the housing court department, such number of housing specialists as he may from time to time determine." G. L. c. 185C, § 16, as amended by St. 1992, c. 379, § 54. The housing specialists "hold office at the pleasure of said chief justice." *Ibid.* They "shall be knowledgeable in the maintenance, repair, and

---

[2]The damages that were doubled under G. L. c. 93A included the $2,400 awarded for breach of implied warranty of habitability and $3,000 awarded for intentional infliction of emotional distress. The court did not double the award of $1,800 for interference with quiet enjoyment, which, when added to the actual damages, brought the judgment to $12,600 plus attorney's fees.

[3]The landlord's appeal does not involve the intentional infliction of emotional distress claim.

rehabilitation of dwelling units; the problems of landlord and tenant as they pertain to dwelling units; the types of funds and services available to assist landlords and tenants in the financing and resolution of such problems"; and the relevant Federal and State laws. *Ibid.* They "shall have such powers and perform such duties as said chief justice shall from time to time prescribe." *Ibid.* See *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. 888, 896 (1990) (G. L. c. 185C, § 16, "provides for the appointment of housing specialists to aid the judge in the performance of his duties"); *Commonwealth* v. *Lappas*, 39 Mass. App. Ct. 285, 286 (1995) (housing court specialists are "able to act as an informed investigative arm of the Housing Court").

The parties have provided the court with no statutory or regulatory guidance[4] specifically directed at the use of housing

---

[4]The landlord did bring to this court's attention "Rule 5" of the "Rules of the Western Division of the Housing Court Department," which appears as a "Miscellaneous Rule" in an unofficial compilation, Massachusetts Rules of Court (State), at 645 (Thomson-West 2003). The identical rule appears in another unofficial source as "Rule 5" of the "Miscellaneous Rules" of the "Rules of the Housing Court for Hampden County." 2 Mass. Ann. Laws, Court Rules, at 1237 (LexisNexis 2003). "Rule 5" would not apply to the Worcester division of the Housing Court, in which this case arises. For whatever instructive value it may have, however, "Rule 5" provides that "[i]n any case where both parties thereto assent, the Court may assign the Housing Specialist Department to take a view of the premises in question and require it to make a written report to the Court, with a copy to both parties, of its observations. This view report shall constitute evidence in the case." Massachusetts Rules of Court (State), at 645 (Thomson-West 2003).

We also note that our research has disclosed no official source of the above-cited rule. While we need not decide the point, it is unclear whether the cited rule is in fact an official rule of the Housing Court Department and currently in force. See St. 1971, c. 843 (inserting G. L. c. 185A, which established the Housing Court of the City of Boston as the first housing court in the Commonwealth, with rulemaking power under G. L. c. 185A, § 7); St. 1973, c. 591 (inserting G. L. c. 185B, which established a second housing court, the Housing Court of the County of Hampden, with rulemaking power under G. L. c. 185B, § 7); St. 1978, c. 478, §§ 91, 92 (repealing G. L. c. 185A and G. L. c. 185B as part of the trial court reorganization, and inserting G. L. c. 185C, which established the Housing Court Department, comprising divisions for Hampden County and for Boston, and with rulemaking at the departmental level under G. L. c. 185C, § 7); St. 2000, c. 159, § 244 (amending G. L. c. 185C to abolish the Hampden County division of the Housing Court department and to establish a western division including Berkshire,

specialists or their reports in court.[5] The tenants contend that the judge's decision is supported by G. L. c. 234, § 35, which provides that "[t]he court may, upon motion, allow the jury in a civil case to view the premises or place in question or any property, matter or thing relative to the case." There are a number of problems with this argument. First, the inspection undertaken here to develop evidence as to the condition of the apartment differs from a view in the traditional sense, which is taken to assist the fact finder in better understanding the evidence. See *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 709 (1974); *Commonwealth* v. *Perryman,* 55 Mass. App. Ct. 187, 195 n.3 (2002).[6] Furthermore, even if the analogy to a view is apt, the requirements of a view have not been satisfied, as notice to the parties is always required prior to a view. *Sargeant* v. *Traverse Bldg. Trust,* 267 Mass. 490, 495 (1929) ("There is no valid objection to a judge taking such a view upon his own motion . . . if he notifies the parties that he proposes to take such view"); *Ball* v. *Planning Bd. of Leverett,* 58 Mass. App. Ct. 513, 520 (2003) ("the parties should have been notified and provided an opportunity to attend the view").[7]

Although not considered by the parties, the requirements for court-ordered investigations in other contexts are also instruc-

Franklin, Hampshire, and Hampden counties). Thus, it seems that the putative "Rule 5," as appearing in the above-cited unofficial sources, may be a remnant of rules of the Housing Court for Hampden County existing before the 1978 creation of the Housing Court Department.

[5] As an illustration of practice in the Boston division of the Housing Court, we note the decision of the former Chief Justice of the Housing Court Department in Burnett *vs.* Beaumont, Boston Housing Court, No. 95-4965 (Sept. 20, 1995) (Daher, C.J.), in which he held that "the Court will send its own Housing Specialist out to view the apartment, and make no decision until that report is filed. If either side wishes to contest the findings of the Housing Specialist, the Court will, upon written motion, allow a further hearing on this matter . . . limited solely to the report of the Housing Specialist . . . ." Similarly, see Piano Craft Guild Assocs. *vs.* Lachance, Boston Housing Court, No. 94-305 (Aug. 3, 1994).

[6] "The purpose of the view is to help you better to understand the evidence which you will hear during the trial, and to help you appreciate the location and its surroundings." Model Jury Instructions for Use in the District Court, Instruction 1.10 (1997).

[7] Views by the judge or jury have been allowed after the close of evidence, if the case is reopened for that purpose. See *Sargeant* v. *Traverse Bldg. Trust,* 267 Mass. at 495.

tive. By way of example, G. L. c. 119, § 24, provides for the use of a court-appointed investigator, with appropriate training and specialized knowledge, "to make a report to the court under oath of an investigation into conditions affecting the child [in care and protection proceedings]. The report shall then be attached to the petition and be a part of the record."[8] In these cases, the parties are notified of the appointment of the investigator, and the report is a part of the record. The investigator must be available for cross-examination. See *Gilmore* v. *Gilmore*, 369 Mass. 598, 603-605 (1976); *Custody of Tracy*, 31 Mass. App. Ct. 481, 485-486 (1991). See also *Adoption of Paula*, 420 Mass. 716, 725 (1995); *Adoption of Georgia*, 433 Mass. 62, 69 (2000).

In the instant case, there was no notice that an inspection would be conducted. There was no opportunity for the parties to challenge either the contents or the admissibility of the report or to examine the housing inspector.[9] The judge's reliance on the report was therefore in error.[10]

The tenants also argue that the error was harmless, as there

---

[8]See G. L. c. 119, § 21 (" 'Evidence', shall be admissible according to the rules of the common law and the General Laws and may include reports to the court by any person who has made an investigation of the facts relating to the welfare of the child and is qualified as an expert . . . or is an agent of the department [of social services] or of an approved charitable corporation or agency substantially engaged in the foster care or protection of children. Such person may file with the court . . . a report in full of all the facts obtained as a result of such investigation. The person reporting may be called as a witness by any party . . ").

[9]The judge simply stated in his findings of fact and order for judgment that the "report is herewith incorporated into the evidence." Neither the judge nor the parties have referenced any express statutory authorization for the admissibility of a housing specialist's report. Contrast G. L. c. 119, §§ 21, 24, cited in text *supra* and at note 8, *supra*; G. L. c. 185C, § 21, cited *infra* at note 11.

[10]Although S.J.C. Rule 3:09, Canon 3(B)(7), as appearing in 440 Mass. 1309 (2003), and effective October 1, 2003, was not applicable at the time of this dispute, we discuss it here to provide future guidance. Canon 3 of the Code of Judicial Conduct states in part that a "judge shall not initiate, permit, or consider any ex parte communication . . . concerning a pending . . . proceeding, except that . . . [a] judge may consult with court personnel . . . whose function is to aid the judge in carrying out the judge's adjudicative responsibilities." *Ibid.* General Laws c. 185C, § 16, makes clear that housing specialists are such court personnel, appointed by the Housing Court, intended to aid in the performance of Housing Court duties. See *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. at 896. Canon 3 further provides, however, "a judge

was other evidence to sustain the finding, including the testimony of the tenants, photographs the tenants took of the apartment, and the inspection reports of the Worcester department of public health and code enforcement.[11] See *Berlandi* v. *Commonwealth*, 314 Mass. 424, 450-451 (1943) (no prejudice where the trial judge stated that taking a view did not "in any way affect" his decision). As, however, the judge expressly based his decision regarding habitability on the report, we cannot say the error was harmless.[12]

3. *Duplicative damage awards.* The landlord, relying on *Darmetko* v. *Boston Hous. Authy.*, 378 Mass. 758, 762 (1979), and *Simon* v. *Solomon*, 385 Mass. 91, 110-111 (1982), contends that the court improperly awarded duplicative damages for the same conduct by awarding both three months' rent on the quiet enjoyment claim under G. L. c. 186, § 14, and $2,400 damages for breach of the implied warranty of habitability.

As provided in G. L. c. 186, § 14, as amended by St. 1973, c. 778, § 2, any landlord who "willfully or intentionally fails to furnish . . . heat . . . or . . . who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant . . . shall . . . be liable for actual and consequential damages or three month's rent, whichever is greater." On this claim, unlike on the count for breach of the implied warranty of habitability, the judge found facts without

shall take all reasonable steps to avoid receiving from court personnel . . . factual information concerning a case that is not part of the case record. If court personnel . . . nevertheless bring non-record information about a case to the judge's attention, the judge may not base a decision on it *without giving the parties notice of that information and a reasonable opportunity to respond*" (emphasis added). S.J.C. Rule 3:09, Canon 3(B)(7)(c)(i). Here, the deployment of the housing specialist after the close of evidence, without notifying the parties, and consideration of the specialist's report without providing the parties an opportunity to respond, would be inconsistent with the mandates of new Canon 3(B)(7).

[11] General Laws c. 185C, § 21, provides in part that "[i]n the trial of any complaint or action in the housing court department, the report of any inspector serving in the housing inspection department of a city or the board of health of any city or town shall be prima facie evidence of the facts stated therein."

[12] We note that the landlord testified, contending that he addressed the violations cited by the city's inspectors. Also, the judge, for unknown reasons, did not rely on the tenants' testimony on this count. Finally, as discussed below, with uncertain fact finding, there is a danger of redundant damage awards.

reference to the housing specialist's report. The judge found that the landlord's unworkmanlike repairs forced the tenants to live in one bedroom for three months. See *Cruz Mgmt. Co.* v. *Thomas*, 417 Mass. 782, 789 (1994) (failure to repair defects violates G. L. c. 186, § 14). The judge also found that the tenants were without adequate heat in March and October. See *Lowery* v. *Robinson*, 13 Mass. App. Ct. 982, 982 (1982) (landlord's failure to provide heat during heating season violates covenant of quiet enjoyment). He therefore awarded statutory damages of three months' rent.

The landlord does not challenge the fact finding or the legal conclusions on this claim, except to argue that the recovery here is duplicative of the award for breach of the implied warranty of habitability. As we shall vacate the implied warranty of habitability award, there remains no possibility that the award for breach of the covenant of quiet enjoyment is redundant.

Accordingly, the judgment is vacated. As to claims other than the tenants' counterclaim for breach of implied warranty of habitability, the tenants shall be awarded possession of the premises and damages in the amount of $7,800 plus reasonable attorney's fees.[13] As to the claim for breach of implied warranty of habitability, further proceedings may be held.[14] The matter is

---

[13]The $7,800 figure represents the sum of (1) the $1,800 damages for interference with quiet enjoyment, and (2) the $3,000 damages for infliction of emotional distress, doubled due to violation of G. L. c. 93A.

[14]Should the breach of the implied warranty of habitability count be retried, the question whether an award, if any, is duplicative will depend on the judge's fact finding and the application of the principles articulated in such cases as *Darmetko* v. *Boston Hous. Authy.*, 378 Mass. at 761 (where a leaking roof was the basis of recovery on both counts, the court held that "[w]e see no reason . . . for the plaintiff to recover cumulatively for a breach of the implied warranty of habitability and for interference with her quiet enjoyment of the premises . . . for the same wrong under each theory"); *Simon* v. *Solomon*, 385 Mass. at 108 (a "single problem — the flooding" in the apartment — could not be the source of three separate recoveries, for breach of the implied warranty of habitability, interference with quiet enjoyment, and infliction of emotional distress); and *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. 228, 236 (1984) (permitting awards under several counts where the claims and injuries were factually distinguishable, but emphasizing that "where the same acts cause the same injury under more than one theory," duplicative damages will not be awarded).

remanded to the Housing Court for further proceedings consistent with this opinion.

*So ordered.*