NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-366                                    Appeals Court

    DOUG CLARK & others[1] vs.  LEISURE WOODS ESTATES, INC.


No. 15-P-366.

Franklin.    November 13, 2015. - February 23, 2016.

Present:  Milkey, Carhart, & Massing, JJ.


Damages, Breach of covenant of quiet enjoyment, Breach of
    implied warranty of habitability, Consumer protection case.
    Landlord and Tenant, Quiet enjoyment, Habitability,
    Consumer protection, Multiple damages, Snow and ice.
    Consumer Protection Act, Damages, Landlord and tenant.
    Manufactured Housing Community.  Snow and Ice.  Witness.



    Civil action commenced in the Western Division of the
Housing Court Department on November 2, 2009.

    The case was heard by Robert G. Fields, J.


    Timothy N. Schofield for the defendant.
    Jan Stiefel for the plaintiffs.


    MASSING, J.  This appeal involves a series of landlord-

tenant disputes in the manufactured housing context.  The

_____

    [1] Linda Clark, Alfred Henderson, Arthur Hicks, Donna
Jalbert, Jane Mayo, Shirley Moulton, and Jeannette I. Stefancik.

plaintiffs, residents of Leisure Woods Estates (Leisure Woods), a manufactured housing community in Orange, filed a complaint alleging that the defendant, Leisure Woods Estates, Inc., which owns, operates, and maintains Leisure Woods, failed to properly maintain and repair the common spaces, roads, and home sites. After a jury-waived trial, a judge of the Housing Court entered judgment in favor of plaintiffs representing seven households,[2] finding a breach of the implied warranty of habitability with respect to the condition of the roads, interference with the plaintiffs' quiet enjoyment of the common walking trails, and separate and distinct breaches of the covenant of quiet enjoyment with respect to the conditions of the seven individual home sites. The judge awarded injunctive relief and monetary damages for the violations, including two separate awards of three months' rent to each household under G. L. c. 186, § 14 (§ 14), for the breaches of the covenant of quiet enjoyment, and a twenty percent rent abatement, trebled under G. L. c. 93A (c. 93A) and the Attorney General's regulations promulgated thereunder, for the breach of the warranty of habitability. The

---

[2] Originally, the complaint included twenty-two plaintiffs representing sixteen households. Four of the original plaintiffs have died since the complaint was filed and suggestions of death were filed as to them. Ten of the other original plaintiffs filed stipulations of dismissal during the course of litigation. The remaining eight plaintiffs are before us in this appeal.

judge awarded each household $13,010.40 (a total of $91,072.80), plus attorney's fees and costs.

On appeal, the defendant argues that the judge erred in awarding multiple triple rent damage awards under § 14 for separate breaches of the covenant of quiet enjoyment, in applying the warranty of habitability to potholes and accumulations of ice and snow on the roads, and in excluding the testimony of a "vital witness" for the defendant who did not arrive in court until after the close of the evidence. We vacate one of the triple rent damages awards as duplicative, but otherwise affirm the judgment.

Background. The defendant purchased Leisure Woods in December, 1997. The complex contains approximately 152 manufactured home sites. The residents own their manufactured housing units and pay the defendant a monthly rental fee for the lots on which their homes are situated. The parties have long disputed their relative roles and responsibilities with respect to the maintenance of the manufactured home sites and common spaces.

After a three-day trial, the judge made detailed findings concerning three distinct violations by the defendant. One violation, a breach of the covenant of quiet enjoyment, related to the residents' inability to use the walking trails. Both the previous owner and the defendant advertised access to the trails

as a desirable amenity of tenancy at Leisure Woods, accessible to all residents.  Beginning in 2007, however, the defendant posted "no trespassing" notices at the entrances of the walking trails and installed cables across some of their openings, closing off access.  The judge awarded each household damages equal to three months' rent based on the defendant's interference with their quiet enjoyment of the trails.

The judge found additional breaches of the covenant of quiet enjoyment with respect to the plaintiffs' individual home sites.  The judge found derelict conditions ranging from rotted and collapsing retaining walls, to unsafe driveways and walkways, to flooding.  Noting that all of the residents were seniors, and that many of them suffered from disabling ailments, the judge found "that the defendant's failure to address the crumbling infrastructure of the lots has seriously interfered with the quiet enjoyment and uses of the premises and forms an independent violation of G. L. c. 186, § 14, separate and distinct from the . . . the defendant's curtailment of the . . . walking trails."  He awarded each household another three months' rent as damages arising from these conditions.

Finally, the judge found that the defendant chronically failed to attend to the accumulation of ice and snow on the roads throughout Leisure Woods, that extensive potholes remained unfilled, and that the roads were often impassable.  The judge

found that the defendant's failure in this regard constituted a breach of the warranty of habitability. He awarded each household damages in the form of a rent abatement of twenty percent for the period from March, 2008, through April, 2013, and trebled this amount under c. 93A.[3]

Discussion. 1. Damages. The defendant argues that the judge made errors of law in providing two awards under the triple rent clause of § 14 and in applying the implied warranty of habitability to roadways. We address each argument in turn.

A. Breaches of the covenant of quiet enjoyment. The judge found two distinct violations of § 14 based on breaches of the covenant of quiet enjoyment and awarded each household two separate awards of three months' rent. The defendant argues that § 14 permits only one triple rent award in a single action, no matter how many distinct breaches of the covenant of quiet enjoyment are proven.

In general, an injured party may recover separate awards of damages for claims or injuries that are "factually separable and distinguishable." Calimlim v. Foreign Car Center, Inc., 392 Mass. 228, 236 (1984). See Abdeljaber v. Gaddoura, 60 Mass. App. Ct. 294, 301 n.14 (2004). The usual measure of damages for breach of the covenant of quiet enjoyment is lost rental value,

---

[3] In addition, the judge awarded the plaintiffs reasonable attorney's fees and costs under both § 14 and c. 93A.

that is, "the difference between the value of what the lessee should have received and the value of what he did receive." Darmetko v. Boston Hous. Authy., 378 Mass. 758, 761 n.4 (1979) (Darmetko). Section 14, however, allows tenants to recover "actual and consequential damages." G. L. c. 186, § 14, as appearing in St. 1991, c. 481, § 22.[4] This provision "was

---

[4] Section 14 provides in part:

"Any lessor or landlord of any building or part thereof occupied for dwelling purposes, other than a room or rooms in a hotel, but including a manufactured home or land therefor, who is required by law or by the express or implied terms of any contract or lease or tenancy at will to furnish water, hot water, heat, light, power, gas, elevator service, telephone service, janitor service or refrigeration service to any occupant of such building or part thereof, who [i] willfully or intentionally fails to furnish such water, hot water, heat, light, power, gas, elevator service, telephone service, janitor service or refrigeration service at any time when the same is necessary to the proper or customary use of such building or part thereof, or any lessor or landlord who [ii] directly or indirectly interferes with the furnishing by another of such utilities or services, or who [iii] transfers the responsibility for payment for any utility services to the occupant without his knowledge or consent, or any lessor or landlord who [iv] directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant, or who [v] attempts to regain possession of such premises by force without benefit of judicial process, shall be punished by a fine of not less than twenty-five dollars nor more than three hundred dollars, or by imprisonment for not more than six months. Any person who commits any act in violation of this section shall also be liable for actual and consequential damages or three month's rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee, all of which may be applied in setoff to or in recoupment against any claim for rent owed or owing."

intended to expand the damages recoverable for breach of the covenant of quiet enjoyment," allowing tenants to be compensated for "all reasonably foreseeable losses -- personal as well as economic -- within the scope of statutory recovery." Simon v. Solomon, 385 Mass. 91, 112-113 (1982) (Simon). Accordingly, the plaintiffs were entitled to recover for all such losses attributable to the defendant's interference with their use of the walking trails and its failure to repair the decaying infrastructure of their housing sites.

Frequently, "damages in rent abatement cases are not capable of precise measurement." Brown v. LeClair, 20 Mass. App. Ct. 976, 978 (1985). Where this is the case, § 14 affords an alternative remedy: three months' rent, if greater than actual and consequential damages. See Darmetko, supra at 762 ("Section 14 allows a minimum recovery of three months' rent as an incentive to the pursuit of relief where the actual and consequential damages are slight or are difficult to prove").

Of course, a party may not recover multiple awards of damages for the same injury based on different theories of recovery -- such awards are said to be cumulative or duplicative. See Calimlim v. Foreign Car Center, Inc., supra at 235-236; Abdeljaber v. Gaddoura, supra. See, e.g., Curtis v. Surrette, 49 Mass. App. Ct. 99, 105 n.14 (2000) (tenants not entitled to recover under both § 14 and State Sanitary Code

based upon same lead paint violations).  The defendant relies on Darmetko and Simon, supra, for the proposition that the two triple rent awards for its breaches of the covenant of quiet enjoyment are duplicative and inconsistent with the purpose of § 14.

In Darmetko, a tenant sued the Boston Housing Authority alleging violations of § 14 for ongoing defects in her apartment.  Darmetko, supra at 759-760.  Finding a breach of the implied warranty of habitability, a judge of the Housing Court awarded the tenant $739.50 to compensate for the reduction of the value of the leased premises attributable to defective floors and a leaky roof and $415 as consequential damages, namely water damage to her personal property.  Id. at 759.  In addition, the judge found that the leaky roof (but not the defective floors) interfered with the tenant's quiet enjoyment of the apartment and awarded her triple rent damages under § 14 for each month during which the breach persisted, another $5,358.  Id. at 760.

The Supreme Judicial Court reversed the damages award on two grounds.  First, the court found no statutory or other basis for the tenant to recover cumulatively under two theories of liability for the same wrong.  Id. at 761.  In addition, the court held that  § 14 does not provide for the triple rent clause to be invoked for each month in which the violation

continues. Id. at 761-762. To the contrary, "[w]hen the actual damages exceed three months' rent, . . . § 14 plainly states that actual damages should be the measure of recovery." Id. at 762.

In Simon, 385 Mass. at 93-95, a tenant alleging repeated flooding of her basement apartment prevailed after a jury trial on claims of intentional infliction of emotional distress, breach of the covenant of quiet enjoyment, and breach of the warranty of habitability. As in Darmetko, supra, the plaintiff was awarded damages under each theory: $35,000 for reckless infliction of emotional distress, a $1,000 rent abatement for breach of warranty, and $10,000 under § 14 for interference with quiet enjoyment. Simon, supra at 94. On appeal, the court concluded "that the $10,000 verdict for interference with quiet enjoyment was, inescapably, an award of redundant damages" and vacated the award. Id. at 108. Following Darmetko, the court held that the triple rent award was not available because the plaintiff's actual and consequential damages from the flooding, awarded under the other two theories, exceeded three months' rent. Id. at 109-110.

Arguing that the $10,000 award was not duplicative, the tenant in Simon speculated that the jury might have arrived at that figure based on ten separate awards of three months' rent for poor conditions in the apartment other than the flooding.

Ibid. The court rejected the possibility of multiple triple rent awards: "When three months' rent has been assessed for one violation, the incentive function of the triple rent provision is fulfilled. Therefore, we hold that a tenant proceeding under § 14 may collect only one such award, covering all claims that the tenant raised or reasonably could have raised in the suit." Id. at 110.

Darmetko and Simon do not strictly govern the case before us. Despite the extended nature of the violations, the plaintiffs here were not awarded repeated damages for each rental period in which the breaches occurred, but rather one triple rent award for each of two factually distinct breaches. Nor were the two triple rent awards duplicative of any recovery for actual or consequential damages.

Nonetheless, the judge's award here is inconsistent with the language in Simon, supra, that says only one triple rent award is available in a single proceeding under § 14, no matter how many ways the landlord interferes with the tenant's quiet enjoyment.[5] The plaintiffs might have shown that the defendant's

---

[5] In providing two triple rent awards, the judge stated that that the defendants' actions violated "separate and distinct prong[s] of G. L. c. 186, § 14," and cited two Housing Court decisions in which tenants recovered two triple rent awards on that basis. Section 14, in fact, prohibits five separate categories of landlord misconduct, the fourth being interference with quiet enjoyment. See note 4, supra. This case involved multiple violations of a single prong of § 14. Our decision

interference with the quiet enjoyment of their homes and the grounds of Leisure Woods caused them damages in excess of three months' rent, and recovered damages in an amount so shown. However, because the plaintiffs did not or could not prove extensive actual and consequential damages, § 14 provided them minimum damages equal to three months' rent (as well as costs and attorney's fees) -- but only one triple rent award in a single proceeding.[6]  Accordingly, on the facts of this case, we must vacate one of each plaintiff household's two triple rent awards.

B.  Violation of c. 93A.  With regard to the roads, the judge found that "[t]he extensive pot holes and unattended accumulation of snow and ice constitute[d] a breach of the warranty of habitability."  The judge further found that the violation was wilful and knowing:  "[t]he defendant knew of, and recklessly disregarded the need to, repair, plow, and sand [Leisure Woods's] roads."  Accordingly, he trebled the plaintiffs' damages under G. L. c. 93A.

---

does not address a situation in which a landlord violated two or more clauses of § 14.

[6] Moreover, if the defendant persists in violating § 14, the plaintiffs may return to court.  "If new violations arise after the initial suit is filed, the tenant may recover triple rent in a new proceeding."  Simon, 385 Mass. at 111.

The defendant argues that the judge erred in classifying the violation as a breach of the warranty of habitability, which "applies to significant defects in the property itself," because "[t]he natural accumulation of snow and ice is not such a defect."  McAllister v. Boston Hous. Authy., 429 Mass. 300, 305-306 (1999).[7]  We need not address whether the implied warranty of habitability applies to the roadways of manufactured housing communities -- which, we note, are an integral part of the rented premises -- because we affirm the c. 93A award of treble damages on different grounds from those on which the judge relied.  See Foley v. Lowell Sun Publishing Co., 404 Mass. 9, 11 (1989); Schwartz v. Travelers Indem. Co., 50 Mass. App. Ct. 672, 673 (2001).  Here, the defendant's conduct violated c. 93A under the Attorney General's manufactured housing regulations, 940 Code Mass. Regs. § 10.00 et seq. (1996).  "In appropriate cases, preference should be given to entry of judgment under the Consumer Protection Act, especially where the Attorney General's regulations provide that certain conduct . . . is violative of G. L. c. 93A."  Calimlim v. Foreign Car Center, Inc., 392 Mass. at 235.

---

[7] The reasoning and holding of McAllister have been limited by Papadopoulos v. Target Corp., 457 Mass. 368 (2010), and Sheehan v. Weaver, 467 Mass. 734 (2014).

"[T]he Legislature has, by G. L. c. 93A, § 2(c), delegated to the Attorney General the power to promulgate rules and regulations defining with specificity acts and practices which violate G. L. c. 93A, § 2(a). These rules and regulations have the same force of law as those of any 'agency' as defined in G. L. c. 30A, § 1(2)." Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 775 (1980). Relevant to this case, the Attorney General's manufactured housing regulations specifically provide that "[a]n operator shall maintain and keep in good repair all community roadways that are part of the common areas and facilities, including but not limited to ensuring that roadways are reasonably free of debris and potholes. An operator shall provide necessary snow plowing for all community roadways" (emphasis supplied). 940 Code Mass. Regs. § 10.05(9) (1996).

The judge found "overwhelming" evidence that the roads at Leisure Woods were significantly damaged by potholes and broken pavement. The residents "testified credibly about the defendant's inadequate removal of snow and treatment for ice on the streets." Thus, the same facts that the judge determined violated the warranty of habitability, which have not been shown to be erroneous, also violated the Attorney General's manufactured housing regulations. As the failure to comply with the regulations amounts to an unfair or deceptive act or practice in violation of c. 93A, see 940 Code Mass. Regs.

§ 10.02(3) (1996), and the judge found the defendant's violations to be wilful and knowing, the judge did not err or abuse his discretion in awarding treble damages.[8]

2. Excluded witness. The defendant contends that excluding the testimony of its president, Glenn Gidley, was "extremely prejudicial" and an abuse of discretion. We disagree.

Gidley, to whom the defendant refers as a "vital witness," arrived inexcusably late on the day he was scheduled to testify -- the last day of the trial. The second day of trial concluded with the fourth defense witness, the defendant's on-site manager (who had been present in court on the first day of trial as well), on the witness stand. The defense expected to call two more witnesses the next day, "Spanky" from Spanky's Tree Service and Gidley. The trial reconvened the next day at 11:05 A.M. and the manager's direct testimony continued. Her testimony concluded after about an hour, but the next witness, Spanky, had

_____

[8] The judge did not err in awarding damages under c. 93A for the conditions of the roadways in addition to damages under § 14 for the curtailment of the use of the walking trails and the deterioration of the home sites. "[W]here the acts complained of under common law, statute, or regulation are factually separable and distinguishable from those claims to be unfair and deceptive, or where those acts have not been found to be violative of the Consumer Protection Act, there is no error in permitting separate recoveries for separable injuries." Calimlim v. Foreign Car Center, Inc., supra at 236.

in defense counsel's words "opted not to show," and Gidley, who "was supposed to arrive about 12:30," had not yet appeared.

The judge attempted to accommodate the defendant by granting a recess until 12:30 P.M.  When the recess ended at 12:37 P.M. and Gidley still was not present, the judge attended to a few procedural matters to allow for more time.  Finally, the judge instructed plaintiffs' counsel to begin her closing argument.  Though Gidley arrived during plaintiffs' counsel's summation, the judge declined the defendant's request to reopen the evidence over plaintiffs' counsel's objection that it would be unfair to allow Gidley to testify after her argument.

The judge acted within his discretion in declining to allow the witness to testify after the evidence had closed.  "The trial judge is in the best position to balance the competing claims of fairness to the litigants and the case-flow efficiency presented by such a motion."  Scannell v. Ed. Ferreirinha & Irmao, Lda., 401 Mass. 155, 158 (1987).  The defendant was responsible for getting all of its witnesses to court in a timely manner, and it would not have been a hardship for Gidley to arrive at 11:00 A.M., when court was scheduled to convene that morning.  The judge was more than fair and reasonable, granting the defendant ample time and opportunity to allow for Gidley's late arrival.  The judge's action was "not so much a punitive sanction as it was the logical and fair resolution of a

case where a party had failed properly to protect its interests." Id. at 160. We discern no abuse of discretion. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).[9]

Conclusion. With respect to each of the seven plaintiff households, one award of three months' rent ($1,026; $7,182 total) under § 14 is vacated. The judgment is affirmed in all other respects.

The plaintiffs have requested and are entitled to an award of appellate attorney's fees under § 14 and c. 93A. See Yorke Mgmt. v. Castro, 406 Mass. 17, 19 (1989); Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass. App. Ct. 453, 461-462 (2007). In accordance with the procedure set forth in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the plaintiffs may file documentation in support of their request for fees and costs within fourteen days of the date of the rescript, and the defendant shall have fourteen days thereafter to respond.[10]

So ordered.

---

[9] Our conclusion that it was within the judge's discretion not to reopen the evidence disposes of the defendant's related argument that the judge erred in making findings regarding the defendant's liability in the absence of Gidley's testimony.

[10] The plaintiffs' request for postjudgment interest should be directed to the trial court. See G. L. c. 235, § 8; Mass.R.Civ.P. 54(f), as amended, 382 Mass. 822 (1980).