ROBERT CURTIS vs. GORDON SURRETTE & another.[1]

No. 98-P-1432.

Worcester. January 12, 2000. - April 11, 2000.

Present: JACOBS, GILLERMAN, & BECK, JJ.

*Housing. Contract,* To guarantee rent payments, Construction of contract.
*Damages,* Breach of covenant of quiet enjoyment. *Landlord and Tenant,*
Quiet enjoyment, Attorney's fees. *Practice, Civil,* Appeal, Attorney's fees.

In a summary process action brought by a landlord who received Federal
subsidy funds for the unit in question, the tenants were liable, under the
terms of the lease and the applicable housing assistance contract, only for
the unsubsidized portion of the rent that they assumed and agreed to pay.
[102-104]

In a summary process action in which the tenants counterclaimed for breach
of the covenant of quiet enjoyment, there was no error in the judge's
award of damages on that claim amounting to three months' rent, and the
fact that the unit was federally subsidized housing did not render the award
a windfall for the tenants. [104-106]

Tenants who prevailed on a counterclaim for breach of the covenant of quiet
enjoyment were entitled to attorney's fees under G. L. c. 186, § 14, for
legal services from the date that the landlord's violation of the statute
became apparent; however, the tenants were not entitled to attorney's fees
on appeal, where they did not prevail on their appellate claim for ad-
ditional damages under the statute. [106-107]

SUMMARY PROCESS. Complaint filed in the Worcester County
Division of the Housing Court Department on March 17, 1998.

The case was heard by *John G. Martin,* J.

*Alan H. Aaron* for the defendants.

*Tom G. Vukmirovits* for the plaintiff.

GILLERMAN, J. In March, 1998, Robert Curtis (landlord) com-
menced summary process proceedings to evict Gordon and Kel-
leigh Surrette (tenants) for nonpayment of rent in federally
subsidized housing in Worcester. The landlord claimed an ar-

[1]Kelleigh Surrette.

rearage of $9,340 through April, 1998. The tenants filed counterclaims alleging (1) violations of the State Sanitary Code, including the presence of lead paint in their unit; (2) breach of the covenant of quiet enjoyment (G. L. c. 186, § 14); and (3) retaliation (G. L. c. 186, § 18).

A trial was held before a judge of the Worcester Housing Court. In his written decision, the judge concluded that the landlord was entitled to back rent in the amount of $8,970.[2] He found for the tenants on their counterclaim for breach of the covenant of quiet enjoyment in the amount of $2,700, and he awarded the tenants $1,000 in attorney's fees. See G. L. c. 186, § 14. The judge concluded that under G. L. c. 239, § 8A, he would enter a judgment for possession in favor of the landlord unless the tenants paid the sum of $6,270[3] to the landlord within seven days of their receipt of the decision. The tenants did not pay the landlord within the specified time period, and judgment for possession was subsequently entered for the landlord.

On appeal, the tenants argue that (1) the landlord's complaint should have been dismissed because it was retaliatory; (2) the amount of back rent awarded to the landlord should have been based solely on the portion of the rent that they were obligated to pay as subsidized tenants rather than on the full contract rent payable by the tenants *and* by the Worcester Housing Authority (WHA)[4]; (3) the damage award on their counterclaim was improperly calculated, as the trial judge simply awarded them three months' rent without making any findings regarding actual damages; (4) the trial judge abused his discretion in awarding them only $1,000 in attorney's fees; and (5) the trial judge should have granted their motion for a new trial or to alter or amend the judgment.

1. *The facts.* We summarize the facts found by the judge. The tenants[5] moved into their unit in July, 1996. The monthly rent provided in the "Section 8" lease, see *Harrington* v. *Fall River*

---

[2]The tenants were credited with a payment of one month's rent in the amount of $370 against the $9,340 that the judge found they owed to the landlord.

[3]The judge deducted the amount that he awarded to the tenants on their counterclaim for breach of the covenant of quiet enjoyment from the arrearage owed to the landlord.

[4]As described below, the Federal subsidy funds were administered by the Worcester Housing Authority.

[5]At the time of trial, the tenants lived in their unit in Worcester with their eight children.

*Hous. Authy.*, 27 Mass. App. Ct. 301, 304 (1989); 42 U.S.C. §§ 5301 et seq. (1995), was $900 (the contract rent) payable in part by the tenant and in part by the WHA. Initially, the tenants' share of the rent was $370[6] per month, but after July 1, 1997, their share was decreased to $330 per month. The balance of the rent was to be paid by the WHA with rent subsidy funds provided by the United States Department of Housing and Urban Development under a program of aid for the rehabilitation of existing housing. See note 4, *supra.* On June 28, 1996, the landlord and the WHA entered into a Housing Assistance Payments (HAP) contract, under which the WHA agreed initially to pay $530 of the contract rent per month. The amount of the monthly housing assistance payment was subject to change during the term of the HAP contract.

The tenants made their last rent payment in February, 1997. They stopped paying rent because they learned that four of their eight children had elevated levels of lead in their blood. At trial, the landlord testified that the WHA made its last subsidy payment in August, 1997. The WHA had ceased making the subsidy payments because the tenants' unit had not been satisfactorily deleaded.

The judge found that the landlord failed to inform the tenants of the presence of lead paint in their unit at the beginning of their tenancy and that the landlord had neglected to give the tenants the notice that was required before any work was done on the premises. See G. L. c. 111, § 197A. The judge also found that the deleading process was undertaken by two licensed deleaders and by the landlord and his family members who worked as "trained low risk" deleaders and that this process took "an unreasonably long time." The judge also observed that the attitude of the tenants toward the deleading work and repair that needed to be done was "generally confrontational and marginally cooperative."[7] Based on these findings, the judge concluded that there had been a substantial interference with the

---

[6]The trial judge stated at one point in his written decision that the tenants' initial share of the rent was $360 per month, but the uncontroverted testimony at trial was that the tenants paid $370 per month. We note that the judge did use the $370 figure in calculating the landlord's award for back rent.

[7]The judge found that "[t]his fact is only partially explained by the acknowledged logistical effort required to deal with a family of ten."

tenants' right to quiet enjoyment of the premises.[8]

2. *Landlord's back rent award.* The judge found that the landlord was entitled to recover $8,970 in back rent. In calculating this award, the judge held the tenants liable for the entire amount of the contract rent ($900 per month) from September, 1997, through April, 1998. This included the months in which the WHA did not make subsidy payments to the landlord (as described below). The tenants argue that any award of back rent to the landlord should be limited to that portion of the rent for which the tenants were individually responsible under the lease.

The landlord claims that he is entitled to recover the full contract rent from the tenants for all of the months in which the WHA did not make subsidy payments. Under the HAP contract between the landlord and the WHA, the WHA had the right to stop subsidy payments to the landlord if the tenants' unit was not maintained in a satisfactory manner. The landlord claims that he attempted to maintain the premises in a satisfactory manner but was prevented from doing so by the tenants. Because the tenants engaged in "confrontational and marginally cooperative" conduct, the landlord argues that the tenants should be held accountable for the consequences of such conduct, including the payment of the entire contract rent.[9] We reject the argument for several reasons.

First, the judge did not find that the "marginal" conduct of

---

[8]On appeal, the tenants claim that the landlord's complaint should have been dismissed because it was retaliatory under G. L. c. 239, § 2A. The judge made no findings in regard to this claim. "Retaliation" was mentioned in passing in the tenants' counterclaim (dismissal of the summary. process complaint was not sought by the tenants) and was not directly addressed at the hearing in the Housing Court. In addition, on appeal, the tenants' argument is conclusory and does not rise to the level of appellate argument. For these reasons, we do not consider this claim. See *Youmans* v. *Ramos,* 429 Mass. 774, 786 n. 3 (1999); Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[9]During trial, the judge stated that the issue of whether the landlord had contractually agreed to hold the tenants liable only for their share of the rent was a question of law for the court. Counsel for the tenants stated that he would leave the decision to the court. However, the judge did not offer any explanation for his decision to calculate the landlord's back rent award based on the entire contract rent rather than the tenants' share of that rent. The interpretation of a contract is generally a question of law; thus, the trial judge's conclusions regarding this issue are subject to plenary review on appeal. See *Suffolk Constr. Co.* v. *Lanco Scaffolding Co.,* 47 Mass. App. Ct. 726, 729 (1999).

the tenants interfered with the performance of the landlord's obligations, and the landlord's contrary assertion is purely speculative. More important is the fact that there is no provision in the lease which provides for liability of the tenants for the entire contract rent in the event the WHA terminates its housing subsidy payments. Indeed, the lease between the landlord and the tenants provides that "[t]he tenant rent as determined by the [WHA] is the *maximum amount* the Landlord can require the Tenant to pay as rent for the dwelling unit" (emphasis added). Furthermore, the HAP contract between the WHA and the landlord provides that "[t]he family is not responsible for payment of the portion of contract rent covered by the housing assistance payment under the HAP contract between the owner and the [WHA]. The owner may not terminate the tenancy of the family for nonpayment of the [WHA] housing assistance payment."

The language contained in these documents is unambiguous, and it is "elementary that an unambiguous agreement must be enforced according to its terms." *Schwanbeck* v. *Federal-Mogul Corp.*, 412 Mass. 703, 706 (1992). See *Suffolk Constr. Co.* v. *Lanco Scaffolding Co.*, 47 Mass. App. Ct. 726, 729 (1999). Regardless of the "marginally cooperative" conduct of the tenants during the deleading process, and even though the WHA terminated the HAP contract with the landlord and ceased making subsidy payments, the tenants never assumed the responsibility of paying the entire contract rent and cannot be forced to do so now.[10]

The Federal regulations regarding the Department of Housing and Urban Development's housing assistance program are consistent with the conclusion we have reached. For example, 24 C.F.R. §§ 982.310(b)(1) and 982.451(b)(4)(iii) (1995) both provide that "[t]he family is not responsible for payment of the portion of . . . rent to owner covered by the housing assistance payment under the HAP contract between the owner and the [housing authority]." Furthermore, 24 C.F.R. § 982.310(b)(2) (1995) provides that "[t]he [housing authority's] failure to pay

---

[10]This analysis also disposes of the landlord's alternate argument that, at the very least, he is entitled to recover the full contract rent from the tenants for March, 1998, and April, 1998, because the HAP contract contains a provision which states that the contract "terminates automatically 180 calendar days after the last housing assistance payment to the owner." Regardless of when the HAP contract was terminated, the tenants never assumed liability for paying the full contract rent.

the housing assistance payment to the owner is not a violation of the lease between the tenant and the owner. During the term of the lease the owner may not terminate the tenancy of the family for nonpayment of the . . . housing assistance payment."

For these reasons, we hold that the tenants may be held liable only for that portion of the contract rent that they assumed and agreed to pay. As a result, the landlord is entitled to recover $370 per month from March, 1997, through June, 1997, which amounts to $1,480. He is also entitled to receive $330 per month from July, 1997, through April, 1998, which amounts to $3,300. The trial judge properly credited the tenants with the payment of one month's rent at $370. Thus, the total arrearage owed by the tenants is $4,410.

3. *Measure of damages for breach of covenant of quiet enjoyment.* The tenants contend that the trial judge improperly calculated the damage award on their counterclaim. The judge found that the landlord had breached the tenants' right to quiet enjoyment of their premises under G. L. c. 186, § 14,[11] and awarded them three months' rent in damages. The award was based on the full contract rent of $900 per month; thus, the tenants received a total of $2,700 on their counterclaim. The tenants claim that the judge erred in awarding them three months' rent pursuant to G. L. c. 186, § 14, without comparing this figure to their actual damages.

General Laws c. 186, § 14, provides that "[a]ny person who commits any act in violation of this section shall . . . be liable for actual and consequential damages or three month's rent, whichever is greater." In an action involving a breach of the covenant of quiet enjoyment where the tenant remains in possession of the premises, actual damages "are measured by the difference between the value of what the lessee should have received and the value of what he did receive." *Darmetko* v. *Boston Hous. Authy.*, 378 Mass. 758, 761 n.4 (1979). See *Charles E. Burt, Inc.* v. *Seven Grand Corp.*, 340 Mass. 124, 130

---

[11]In relevant part, this statute imposes civil and criminal liability on a landlord who "directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant." G. L. c. 186, § 14. Defective conditions in leased premises may constitute an interference with the tenant's quiet enjoyment of the leased premises. See *Simon* v. *Solomon*, 385 Mass. 91, 99 (1982).

(1959).[12] If actual damages are greater than three month's rent, "the triple rent measure has no function." *Simon* v. *Solomon*, 385 Mass. 91, 110-111 (1982).

While the judge did not explicitly find that the award of three months' rent was greater than the tenants' actual damages, it is sufficiently clear from his written findings that he took into consideration the factors that were necessary to calculate a proper damage award. See, e.g., *McKenna* v. *Begin*, 3 Mass. App. Ct. 168, 171 (1975) (in valuing defective premises, "consideration is to be given to various factors including, but not limited to, the nature, duration and seriousness of defects and whether they may endanger or impair the health, safety or well being of the occupants"). The judge properly took the conduct of both parties into account in determining the damage award.[13] Although it would have been preferable for the trial judge to give a detailed explanation of his calculations, his informed opinion is, we think, sufficiently reflected in the award. See *Brown* v. *LeClair*, 20 Mass. App. Ct. 976, 978 (1985) ("[R]ent abatement cases are not capable of precise measurement. 'While the damages may not be determined by speculation or guess, an approximate result is permissible if the evidence shows the extent of damages to be a matter of just and reasonable inference' "); *Young* v. *Patukonis*, 24 Mass. App. Ct. 907, 910 (1987). Thus, we conclude that there was no error in calculating the damage award for the breach of the covenant of quiet enjoyment.[14]

Allowing the tenants to recover on their counterclaim on the

[12]In *Darmetko*, the court noted that the remedies for a breach of the covenant of quiet enjoyment and the remedies for a breach of the implied warranty of habitability are "quite similar." *Darmetko* v. *Boston Hous. Authy.*, 378 Mass. at 761 n.4. Thus, we regard decisions involving the implied warranty of habitability as persuasive authority in resolving the issue of damages in this case.

[13]For example, the judge noted the "marginally cooperative" conduct of the tenants, as well as the fact that the deleading effort of the landlord took "an unreasonably long time."

[14]The tenants briefly argue that they were aggrieved by the trial judge's ruling that any award regarding the landlord's violations of the State Sanitary Code "would be subsumed in the greater recovery under General Laws Chapter 186, Section 14." There was no error in this ruling. The tenants may not recover cumulatively for a breach of the covenant of quiet enjoyment and for violations of the State Sanitary Code based upon the same lead paint violations. See *Darmetko* v. *Boston Hous. Authy.*, 378 Mass. at 761. Furthermore, to the extent that some of the sanitary code violations did not

basis of the full contract rent, while allowing the landlord to recover on his claim for back rent based only upon the tenants' share of the rent, does not result in a windfall to the tenants or in an award of punitive damages. "Whether or not the tenant is required to pay in rent the full value of the apartment as warranted, the tenant is nonetheless entitled to damages based upon the value of the premises in a liveable condition. It is, after all, the tenant who suffers when conditions in an apartment violate [the covenant of quiet enjoyment]." (Citations omitted.) *Cruz Mgmt. Co.* v. *Wideman*, 417 Mass. 771, 775-776 (1994).

4. *Attorney's fees.* After trial, the judge awarded the tenants attorney's fees in the amount of $1,000 based on the fee provision of G. L. c. 186, § 14. The tenants claim that the judge abused his discretion in rendering the award. Their attorney submitted an affidavit to the trial judge in which he indicated that he performed 38.5 hours of work on the tenants' case at a rate of $200 per hour, for a total of $7,700 in fees. The tenants claim that the issues in the case were complex and were worth more than an award of $1,000.

The guidelines for determining a reasonable attorney's fee authorized by statute have been set forth in *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629 (1978), and in *Linthicum* v. *Archambault*, 379 Mass. 381, 388-389 (1979). Here, the trial judge considered these guidelines and found that an excessive amount of time had been devoted to the issues. However, he also found that time spent before the landlord's notice to quit, given February 9, 1998 — eleven months after the tenants first exercised their right to withhold rent — was not cognizable under § 14. We disagree. The tenants were certainly well advised to consult counsel promptly after the discovery of the lead paint in February, 1997. Four of their eight children, the judge found, had been diagnosed with elevated blood lead levels. The landlord, as we have said, failed to inform the tenants of the presence of lead paint at the beginning of their tenancy in July, 1996, and the continuing unresolved condition of lead paint in the leased premises was, the judge found, a substantial interference with the tenants' quiet enjoyment. There being a violation of § 14 at least as early as February, 1997, the tenants are entitled to recover attorney's fees for legal services that were required beginning in February, 1997.

involve the presence of lead paint in the unit, the trial judge found that these violations were "de minim[i]s" and therefore afforded no recovery to the tenants. Again, we perceive no error in this ruling.

The tenants also argue that they should be awarded attorney's fees on appeal. "We have recognized the explicit language of G. L. c. 186, § 14, which provides for payment of attorney's fees, and this language is *not* limited to attorney's fees for trial proceedings" (emphasis original). *Yorke Mgmt.* v. *Castro,* 406 Mass. 17, 19 (1989). However, because the tenants did not prevail on their appeal for additional damages pursuant to this statute, they are not entitled to costs and attorney's fees arising from that appeal. See *Yorke Mgmt.* v. *Castro,* 406 Mass. at 20. While the tenants were successful in reducing the damages on the landlord's claim for back rent, § 14 is available only for fees incurred in connection with violations of § 14, and the landlord's claim to unpaid rent was not such a violation. Thus, we see no reason to depart from the traditional American rule that the prevailing party is not entitled to attorney's fees. See *Yorke Mgmt.* v. *Castro,* 406 Mass. at 18-19; *PGR Mgmt. Co., Heath Properties* v. *Credle,* 427 Mass. 636, 641 (1998).

5. *Conclusion.* The judgment is vacated. The case is remanded to the Worcester Housing Court for entry of an amended judgment as follows. The award of fees of trial counsel in the amount of $1,000 shall be vacated, and a new order for counsel fees, calculated on a basis consistent with this opinion, is to be entered. Prior to entering the new judgment, the Housing Court shall give written notice to the tenants of the balance due on their rent, i.e., the amount due based solely on the tenants' share of the rent. That is to say, the landlord is entitled to an award of $4,410, from which the tenants' award of $2,700 on their counterclaim for the breach of the covenant of quiet enjoyment should be deducted. Pursuant to G. L. c. 239, § 8A, the court shall allow the tenants seven days from receipt of notice to pay the clerk of the court the sum of $1,710. If the tenants pay this sum within the specified time period, judgment for possession and for attorney's fees shall enter for the tenants. If the tenants fail to pay this sum within the specified time, then judgment for possession and $1,710 shall enter for the landlord, and judgment for attorney's fees shall enter for the tenants.

*So ordered.*