OPINION OF THE COURT
Memorandum.
Order unanimously reversed without costs and tenant’s motion to dismiss the petition granted.
In this nonpayment proceeding, the petition seeks to recover a balance of $170.28 for each month from February through June 2004, alleging that there is a written rental agreement in effect in which tenant agreed to pay these rents and that the subject cooperative apartment is not rent stabilized. The record reveals, however, that the apartment is rent stabilized and that tenant’s last lease expired on May 31, 2003 and has not been renewed. The record further establishes that tenant was a recipient of a section 8 subsidy during the term of her last lease and for some period of time thereafter, prior to landlord’s purchase of the shares, and that the $170.28 per month sought represents what is, or at least formerly was, the section 8 portion of the monthly rent.
Tenant, a 27-year resident of the apartment in a noneviction co-op, filed a complaint with the Division of Housing and Community Renewal (DHCR) in October 2003 after her previous landlord had refused to offer her a renewal lease. In or around April 2004, the apartment was sold to petitioner landlord.[1] Landlord refused to accept tenant’s section 8 subsidy, and tenant filed a complaint of harassment with DHCR on June 25, 2004. By a petition filed June 30, 2004, landlord commenced this nonpayment proceeding.
On August 10, 2004, while the instant proceeding was pending, the parties appeared for a conference before a DHCR attorney to address tenant’s separate harassment complaint. At that conference, landlord asserted that she was not required to accept tenant’s section 8 subsidy. In a letter dated August 10, *78 2004 memorializing the conference, the DHCR attorney stated that he contacted section 8 and that “[t]hey confirmed that [landlord] did not have to accept the Section 8 program.” Other than this letter summarizing the conference, there is no formal order from DHCR determining that landlord may refuse to accept section 8 as part of a renewal lease.[2]
On September 14, 2004, DHCR issued an order in response to tenant’s October 2003 complaint. Although the order directs landlord to offer a renewal lease “on the same terms and conditions as provided in the expiring lease,” it does not specify what those terms and conditions are, nor does it mention section 8. The court below denied tenant’s motion to dismiss this nonpayment proceeding and, among other things, adhered to the DHCR attorney’s August 10, 2004 “ruling” that landlord was within her rights in initiating this nonpayment proceeding (see 5 Misc 3d 1023[A], 2004 NY Slip Op 51522[U] [2004]).
While the parties would have this court decide, as did the court below, the issue, widely litigated of late, of whether a landlord of a rent-stabilized unit may discontinue its participation in the section 8 program (see e.g. Rosario v Diagonal Realty, LLC, 9 Misc 3d 681 [Sup Ct, NY County 2005], and cases cited therein; Kulick & Rheingold Realty, LLC v Montero, 8 Misc 3d 1007[A], 2005 NY Slip Op 50974[U] [Civ Ct, NY County 2005], and cases cited therein), it is our view that this issue cannot properly be adjudicated in the context of this nonpayment proceeding. It is elementary that a nonpayment proceeding must be predicated upon an agreement by the tenant to pay the rents demanded (RPAPL 711 [2]; see Matter of Jaroslow v Lehigh Val. R.R. Co., 23 NY2d 991 [1969]; Krantz & Phillips, LLP v Sedaghati, 2003 NY Slip Op 50032[U] [App Term, 1st Dept 2003]). A section 8 tenant agrees, under governing federal regulations, to pay only the tenant share of the rent (24 CFR 982.310 [b]; 982.451 [b]; see Prospect Place HDFC v Gaildon, 6 Misc 3d 135[A], 2005 NY Slip Op 50232[U] [App Term, 1st Dept 2005]; see also 7 Highland Mgt. Corp. v McCray, 9 Misc 3d 129[A], 2005 NY Slip Op 51530[U] [App Term, 9th & 10th Jud Dists 2005]). In the absence of a new agreement, after the termination of the subsidy, in which the tenant agrees to pay the nontenant share of the rent, a nonpayment proceeding will not lie to recover that portion of the rent, even in those instances in which the section 8 subsidy has been properly terminated (id.; *79 Prospect Place HDFC v Gaildon, 6 Misc 3d 135[A], 2005 NY Slip Op 50232[U] [2005], supra; Rainbow Assoc. v Culkin, 2003 NY Slip Op 50771[U] [App Term, 2d & 11th Jud Dists 2003]; Parkmore Props. v Prasad, NYLJ, Oct. 19, 1999, at 29, col 3 [App Term, 9th & 10th Jud Dists]; Livecchi v Pyatt, 2003 NY Slip Op 50925[U] [Rochester City Ct 2003]; Curtis v Surrette, 49 Mass App Ct 99, 726 NE2d 967 [2000]). Since tenant’s last lease expired on May 31, 2003 and tenant was then a recipient of a section 8 subsidy and because no new agreement was entered into subsequent thereto, this nonpayment proceeding does not lie to recover the nontenant portion of the rent.
We do not reach the issue of whether the landlord of a rent-stabilized unit could refuse to participate in the section 8 subsidy program under the facts presented herein. The issue in this particular case could have been more appropriately decided before DHCR. The parties had ample opportunity to seek clarification from DHCR as to whether acceptance of the section 8 program was a “term and condition” to be included in the new rent-stabilized lease.[3] Indeed, the parties could have sought a formal determination from DHCR following the August 10, 2004 letter, which indicated that landlord did not have to accept the section 8 program. Any determination could then have been administratively appealed and, ultimately, challenged in a proceeding pursuant to CPLR article 78.
Pesce, PJ., Weston Patterson and Golia, JJ., concur.

. Although the court below identified the date of purchase to be in or around April 2004, a letter written by landlord and attached to landlord’s opposition papers below indicated that the date of purchase was January 23, 2004.

. Because the August 10, 2004 letter was not a DHCR order, it was improper for the court below to rely on it.

. Neither the September 14, 2004 DHCR order — which solely addressed the previous landlord’s failure to renew a rent-stabilized lease — nor the informal August 10, 2004 letter resolved this issue.