Hand, J.
In August, 2007, Tonia Williams (“Williams”) rented a home from Brendan Lopes (“Lopes”) and Tiffany Mendes (“Mendes”) (together, “landlords”). The relationship between Williams and her landlords eventually soured, and Lopes and Mendes brought a summary process action to evict Williams. The matter was tried, jury waived, on May 14, 2009. As of the trial date, Williams had vacated the rental property, rendering moot the issue of possession. While Lopes’ and Mendes’ summary process complaint alleged that Williams owed a balance of $565.00 on her security deposit, the landlords waived this claim before trial. The remaining issues before the trial judge were limited to Williams’ counterclaims for breach of warranty of habitability, breach of the covenant of quiet enjoyment, and violations of G.Lc. 186, §15B, the “security deposit law.” Before closing arguments, Williams filed requests for findings of fact and rulings of law pursuant to Mass. R. Civ. P., Rule 52(c).
After trial, the judge found substantially in favor of the landlords with respect to Williams’ security deposit claims, against Williams on her counterclaims for warranty of habitability and quiet enjoyment, and against the landlords for any other claims that the landlords had against Williams in the action. Rather than responding to Williams’ individual requests for findings and rulings, and as permitted under Mass. R. Civ. R, Rule 52(c), the trial judge issued a memorandum of decision outlining his findings on certain facts relevant to his decision on Williams’ security deposit claims, and the reasons for his rulings on those claims. As to Williams’ remaining counterclaims, the judge stated simply, “I find for no other claims or counterclaims for either party.” On appeal, Williams objects to the trial judge’s determination that only $1,465.00 of her payments to the landlords should be viewed as security deposit funds; argues that the judge erred in awarding Williams damages based on the landlords’ handling of her security deposit; and objects to the judge’s failure to rule specifically on her requests for rulings on her counterclaims. For the reasons set forth below, we affirm the judge’s determination that Williams’ security deposit was limited to $1,465.00; otherwise, we vacate the trial court’s decision on Williams’ security deposit claims, and order judgment for Williams in the amount of $4,395.00 on those claims, with interest.[2] Williams is entitled to her reasonable attorney’s fees on this counterclaim. We return the case to the trial court for a determination of those fees, and a new trial on Williams’ counterclaims for breach of warranty of habitability, failure to provide utilities, and breach of covenants of quiet enjoyment.
Turning to the record before us, we review the facts found by the trial judge for clear error, giving due regard to the trial judge’s ability to determine the weight and credibility of the evidence presented. Mass. R. Civ. E, Rule 52(c). See, e.g., 31-35, LLC v. Zucco, 2008 Mass. App. Div. 14. The facts, as found by the judge and supplemented as necessary from the undisputed evidence included in the record before us, follow.
*229 On August 2, 2007, Williams signed a one-year lease with Lopes and Mendes for a property at 102 Parson’s Lane in Waquoit, Massachusetts (“property”).[3] The total monthly rent was $1,465.00; of that amount, the Housing Assistance Corporation (“HAC”) was responsible for $1,193.00 of each month’s rent, and Williams was responsible for paying $272.00 per month.[4] Lopes and Mendes were not experienced landlords and had little, if any, familiarity with the strict legal standards applicable to landlord-tenant relations. In addition to the rental obligation, Lopes and Mendes required Williams to provide them with a security deposit of $1,465.00.[5]
Between August 2, 2007 and October 2, 2007, Williams made four separate payments to Lopes and Mendes. These payments kept Williams’ rent current, and included payment of $1,565.00 above the amount of her rent. Williams intended this overage to be allocated to her security deposit obligation.[6] As the trial judge found, both parties were “confused” as to which portions of Williams’ payments during this period would be credited to security deposit and which portion credited to the rent. The landlords did not provide Williams with any statement of conditions for the properly.
On August 10, 2007, the landlords opened an interest-bearing personal savings account in the name of Tiffany Mendes into which they deposited $900.00 of Williams’ total security deposit payments. It is undisputed that the landlords did not provide Williams with documentation of the name or location of the bank in which the security deposit funds were held, or with proof of the amounts of money deposited in that account, as they were required to do under G.L.c. 186, §15B.
On December 15, 2008, Lopes and Mendes served Williams with a summary process summons and complaint, alleging that Williams was in arrears on “rent/security” in the amount of $2,050.00. Williams filed a timely answer. Among Williams’ counterclaims against Lopes and Mendes was a claim for violations of G.L.c. 186, §15B, governing the handling of security deposits.
Williams vacated the property no later than March 22, 2009. Williams paid her required share of the rent in full for March, 2009. HAC paid $411.93 for March, 2009, representing HAC’s determination of what it owed toward its prorated obligation on Williams’ rent for that month. On the record before us, the landlords did not return Williams’ security deposit, or any part of it, to Williams within 30 days of the termination of her tenancy.
1. Williams’ first argument on appeal is that the trial court committed a factual *230 error in its finding that, as of October 2, 2007, Williams had paid a security deposit of $1,465.00. We find no error on this point. Williams had, in fact, paid $1,535.00 over her rent obligations by August 2, and had intended that all such payment be credited toward the security deposit. Both the terms of the lease and the provisions of G.L.C. 186, §158(1) (b) (iii), however, limited the security deposit to the amount of a single month’s rent: $1,465.00. The trial courfs finding that Williams paid $1,465.00 toward her security deposit was correct. Williams’ additional $70.00 overpayment was creditable toward her rent payments.
2. Williams next argues that the trial court erred in failing to find that the landlords’ mishandling of her security deposit entitled her, under G.L.c. 186, §15B, the “security deposit law,” to damages of three times the amount of that deposit, plus interest and reasonable attorney’s fees. We agree.
General Laws c. 186, §15B sets out detailed requirements for landlords’ handling of tenants’ security deposits. The landlords’ conduct here failed in several ways to comply with those requirements. Subsection (3) (a) of the statute requires the landlord to hold the tenants security deposit in a separate account protected from the reach of the landlord’s creditors and to provide the tenant with a receipt for the deposit within thirty days after the deposit is received.[7] Id. §15B(3)(a). Failure to comply with the terms of this subsection “shall entitle the tenant to immediate return of the security deposit.” Id. However benign the landlords’ intentions or innocent their misunderstanding of the requirements of the security deposit statute, the fact remains that Lopes and Mendes failed to establish the required escrow account and to hold the full amount of Williams’ security deposit in that account as required by this subsection. Under subsection (3) (a), having failed to place Williams’ security deposit in a qualifying account, and having failed to provide the receipt within 30 days after receipt of the security deposit funds, the landlords were required to make “immediate” return of Williams’ full security deposit. See Taylor v. Beaudry, 75 Mass. App. Ct. 411, 416 (2009) (where statutory obligation imposed by G.L.c. 186, §15B is clear, and both time within which landlord is required to act and consequences of complying with deadline are likewise “unambiguous,” statute must be read according to its plain meaning). See also Mellor v. Berman, 390 Mass. 275, 279-280 (1983) (same, construing §15B(7)). On the record before us, the landlords were required *231 to return Williams’ security deposit payments “immediately” on the expiration of the thirty-day deadline established in subsection (3) (a) of the statute.[8] They did not do so.
Lopes’ and Mendes’ failure to return the security deposit contributions as subsection (3) (a) required triggered the additional sanction, under subsection (6) (a) of the statute, of forfeiture of their right to retain any part of the security deposit funds. Id §15B (6) (a) (where landlord fails to deposit security deposit funds in compliance with subsection (3), landlord “shall forfeit his right to retain any portion of the security deposit for any reason, or, ... to counterclaim for any damage to the premises”). Additionally, and independent of their noncompliance with subsection (3) (a), Lopes’ and Mendes’ failure to return Williams’ security deposit to her within thirty days of the termination of her tenancy violated subsection (6) (e) of the statute, triggering the same sanction. Id. §15B(6)(e). (“The lessor shall forfeit his right to retain any portion of the security deposit for any reason... if he:... (e) fails to return to the tenant the security deposit... within thirty days after the termination of the tenancy.”). Had the landlords not already lost what entitlement they may have had to the security deposit moneys, they would have forfeited those rights by their violation of subsection (6) (e). Id
Finally, the landlords’ violations of subsections (6) (a) and (6) (e) required the trial court to award the triple damages and other monetary sanctions detailed in subsection (7) of the statute. Id §15B(7) (“If the lessor... fails to comply with clauses (a), (d), or (e) of subsection 6, the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such payment became due, together with court costs and reasonable attorney’s fees” [emphasis added]). The landlords’ good faith is irrelevant to these considerations. See Mellor, supra at 280. Williams is entitled to these damages.
3. Next, Williams appeals the trial court’s determination that she is liable to Lopes and Mendes for unpaid rent. We determine that Williams owes the defendants no rent. The only rent arguably due to the Landlords is a balance of $1,053.07 of the total $1,465.00 rent for March, 2009. It is undisputed that Williams paid in full the portion of the total March rent for which she was responsible under the Section 8 program; the $1,053.07 in dispute is the portion of HAC’s contribution to the March, 2009 rent that it opted not to pay after Williams vacated the property.
Williams cannot be held responsible for the payment of the disputed portion of the March, 2009 rent, under the terms of the Housing Assistance Program Contract (“HAP Contract”) between Lopes and Mendes, as landlords, and HAC, at Part C, the ‘Tenancy Addendum,” “[t]he tenant is not responsible for paying the rent to owner covered by PHA[9] housing assistance payment under the HAP contract between the owner and the PHA.” Here, as in Curtis v. Surrette, 49 Mass. App. Ct. 99 (2000), the *232 language prohibiting the landlords from seeking HAC’s portion of the monthly rent from the tenant is clear and unambiguous, and so “must be enforced according to its terms.” Id. at 103, quoting Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992). “[T]he tenant!] never assumed the responsibility of paying the entire contract rent and cannot be forced to do so now.” Id.
4. Lastly, Williams objects to the trial judge’s failure to address specifically her requests for rulings of law numbers 5 through 32. The requests at issue concern Williams’ counterclaims for breach of warranty of habitability (requests 5 through 10); failure to provide utility service (requests 11 through 20); interference with quiet enjoyment (requests 21 through 25); and violation of security deposit law (requests 26 through 32). In his memorandum of decision, the trial judge indicated that other than Williams’ entitlement to a balance of her security deposit, plus interest, “I find for no other claims or counterclaims for either party.”
While the trial judge’s concise denial of the parties’ claims, other than those addressed in the judge’s memorandum of decision, may simply be a reflection of the judge’s determination that neither side had presented sufficient credible evidence to sustain its burden on the remaining claims, we can hypothesize other reasons for his denial of those counterclaims. Therefore, we cannot say that the judge’s memorandum of decision on Williams’ remaining counterclaims “articulate [s] the essential grounds of [the judge’s] decision.” 31-35, LLC, supra at 17, citing Draleau v. Crathern Eng'g Co., 1996 Mass. App. Div. 1, 2. The parties are entitled to a clearer identification of the judge’s reasoning. We have addressed above Williams’ counterclaim based on the landlord’s handling of Williams’ security deposit. As to the remaining requests identified in Williams’ appeal, we return the case to the trial judge for a new trial, on Williams’ counterclaims for breach of warranty of habitability, for failure to provide utilities, and for breaches of the covenant of quiet enjoyment.
5. Given our decisions with respect to the other issues raised in this appeal, we do not address the correctness of the trial court’s denial of Williams’ motions pursuant to Mass. R. Civ. R, Rules 52(c) and 59(e).
Based on the foregoing, the trial court’s judgment is vacated. Judgment shall be entered for Williams and against the landlords in the amount of $70.00 in overpaid rent, plus $4,395.00 on Williams’ fourth counterclaim for the landlords’ violation of G.L.c. 186, §15B, plus interest and reasonable attorney’s fees. The trial court shall assess the attorney’s fees and calculate the interest consistent with the requirements of G.L.c. 186, §15B(7). A new trial shall then be conducted in the Falmouth District Court on Williams’ counterclaims for breach of warranty of habitability, failure to provide utilities, and breaches of the covenant of quiet enjoyment.
So ordered.

 As discussed in more detail below, Williams overpaid the landlords by $70.00, believing those funds to have been allocated to her security deposit. The landlords are required to return the $70.00 overpayment to Williams.

 The lease was arranged through the Section 8 Housing Choice Voucher Program, administered by the Housing Assistance Corporation (“HAC”). The rental rate of $1,465.00 was approved by HAC. The terms of the program called for HAC to pay a defined portion of each month’s rent and for Williams to pay the balance.

 Later in her tenancy, Williams’ income changed and so, consequently, did her share of the rent. That change does not affect our analysis here.

 The parties originally agreed upon a $1,600.00 security deposit, but were later informed by HAC that the maximum security deposit that the landlords could require of Williams was $1,465.00.

 From August, 2007 through February, 2009, both Williams and HAC timely paid the rent.

 In full, the section provides as follows:
(3) (a) Any security deposit received by [the lessor of a dwelling unit or premises] shall be held in a separate, interest-bearing account in a bank, located within the commonwealth under such terms as will place such deposit beyond the claim of creditors of the lessor, including a foreclosing mortgagee or trustee in bankruptcy, and as will provide for its transfer to a subsequent owner of said property. A receipt shall be given to the tenant within thirty days after such deposit is received by the lessor which receipt shall indicate the name and location of the bank in which the security deposit has been deposited and the amount and account number of said deposit. Failure to comply with this paragraph shall entitle the tenant to immediate return of the security deposit.
G.Lc. 186, §15B(3)(a).

 We calculate that the landlords were required to have returned to Williams her first $1,135.00 payment as of August 31,2007; her $200.00 payment as of October 8, 2007; and $130.00 of Williams’ October 2, 2007 payment by November 2, 2007.

 “PHA” is defined in the HAP Contract as “Public Housing Agency.” HAC identified itself, in signing the HAP Contract, as the PHA for the purposes of that agreement.